Munson et al. vs. Board of Commissioners.

## No. 10,750.

E. J. MUNSON ET AL. VS. BOARD OF COMMISSIONERS OF "THE ATCHAFALAYA BASIN LEVEE DISTRICT."

SEARING TAYLOR ET AL. VS. SAME.

JOSEPH AUCOIN ET AL. VS. SAME.

ALDRICH AND BARTON ET AL. VS. SAME.

JOHN HILL ET AL. VS. SAME.

J. K. G. KITRIDGE ET AL. VS. SAME.

### CONSOLIDATED.

1. A tax for the local purposes of a particular district of country is imposed on the persons domiciled, or the property therein situated, as distinguished from other portions of the State; and it is usually imposed upon all the subjects on which the State imposes a tax, within that particular district of country for State purposes, without any attention being paid to the benefits to be conferred. Such a tax is the one provided for, and contemplated in Article 214 of the Constitution, and in its amendment.

2. A local assessment is a contribution for the purpose of constructing works of public improvement for the advantage of a particular district, and not to be levied upon taxable property generally, but upon particularized property to be benefited thereby, and with direct reference to such benefit as the property may receive therefrom.

3. The levy of a local assessment is an exercise of the taxing power in its broadest and most comprehensive sense; yet it is not a "tax" *eo nomine*, and is not governed by the provisions of the Constitution on the general subject of taxation; but same is exerted entirely independently of all its provisions on the subject of taxation.

4. A local assessment is not a *burden* but an equivalent for enhanced value which property peculiarly situated, as respects a contemplated improvement, is supposed to receive therefrom—a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes, and which is governed by principles which do not apply generally.

5. Whether particular property will be benefited at all, and to what extent it should be locally assessed, are purely political questions with which the Legislature is competent to deal, and the determination of those questions must be left to its wisdom and discretion. But when a question of the necessity for an increase of the rate of levee district taxation arises, it must be referred to the property tax payers of the district.

6. The two purposes which were subserved by the amendment of Article 214 of the Constitution were (1) an increase of the rate of taxation therein limited, from *five* to *ten* mills, and (2) a provision of the means for a further increase of the rate of taxation therein limited, by its submission of the question to a vote of the property tax payers of the district.

7. This amendment relates to and provides for district levee taxation, and does not relate to or limit legislative power of local assessment.

8.  In respect to the provisions of Act 97 of 1890, appertaining to the levy of acreage and produce taxes, it is held to be constitutional; and the levee district bonds which are therein authorized to be issued are held to be of unquestionable validity, and the legislative authorization thereof is likewise held to be constitutional.

9.  Inasmuch as the Federal government has not as yet assumed permanent control of the levees in this State, and has not as yet provided ways and means for their maintenance, the limitations imposed in Article 215 of the Constitution, upon the powers conferred in Articles 213 and 214, are inoperative, and the charge of unconstitutionality of Act 97 of 1890, in this regard, can not be maintained.

A PPEAL from the Twenty-third District Court, Parish of West Baton Rouge. *Talbot, J.*

*R. N. Sims, J. E. Poché* and *G. A. Gondran* for Plaintiffs and Appellants:

1.  Prior to the adoption of the Constitution of 1879, the taxing power of the Legislature of the State appears to have been untrammeled or unrestrained by any constitutional limitation. The manner in which that unbridled discretion was exercised is well illustrated by the enormous volume of the State debt at the time of the adoption of the constitutional amendment of 1874, scaling and reducing the same to 60 cents on the dollar, and the heavy and crushing burdens under which the inhabitants of the parishes and municipal corporations in this State struggled and groaned for years.

2.  The call for a constitutional convention in 1879 was inspired by the desire and determination of the people to arrest and correct, and, if possible, forever prevent a recurrence of the flagrant abuses and wasteful extravagance which had prevailed in the administration of their public affairs under the Constitution of 1868, for a period of nearly ten years, the evils whereof remained and were solely felt and realized in excessive and oppressive rates of taxation.

3.  The *raison d'etre* of the constitutional convention of 1879 was the purpose of the people to place restrictions and limitations upon the legislative authority, especially with respect to the taxing power, and to reduce the burden of taxation. This fact is historical, and every line in that instrument strongly confirms it. Therefore does it constitute a most important element in the construction of legislative powers under our existing Constitution.

4.  The plea of *stare decisis*, founded upon the authority of the Charnock and Excelsior Planting Company cases, ought not to prevail. At the time those decisions were rendered, the amendment to Article 214, which expressly restricts the authority of the commissioners to raise additional district funds for levee purposes to the conditional approval of the property tax payers, had not been adopted, and the proviso in the amendment implies and carries an absolute prohibition to raise additional funds by any other method. No "rule of property" is involved in these cases. Plaintiffs resist what they consider acts of legislative usurpation to prevent confiscation and consequent irreparable injury. The vindication of their rigats can not affect acts in other districts, the validity of which has heretofore received judicial recognition.

Munson et al. vs. Board of Commissioners.

5. In construing constitutions, courts have nothing to do with the argument *ab inconvenienti*, and should not bend the Constitution to suit the law of the hour. 5 Ind. 565.

Contemporary construction * * * can never abrogate the text; it can never fritter away its obvious sense; it can never narrow down its true limitations; it can never enlarge its natural boundaries. Story on Const., Sec. 407.

Acquiescence for no length of time can legalize a clear usurpation of power where the people have plainly expressed their will in the Constitution and appointed judicial tribunals to enforce it. Cooley Const. Lim., p. 71.

In exercising this high authority, the judges claim no judicial supremacy; they are only the administrators of the public will. Ibid., p. 160.

6. Acts 95 and 97 of 1890, so far as they authorize the commissioners of the two districts to levy or assess acreage taxes on lands, taxes on specified products of the soil and the issue of bonds, are without warrant in the Constitution, are unconstitutional, in violation of the provisions of Article 214 and in derogation and contravention of the provisions of Article 215.

7. The only power vested in the commissioners to raise funds for levee purposes by the exercise of the taxing power is conferred upon them directly by the Constitution, Article 214, which confines that power to the alluvial portions of the district subject to overflow, and limits the levy to 10 mills. 33 An. 833.

8. The Constitution having fixed and established the basis of apportionment, limited the rate of taxation and provided for an increase of funds in case of necessity, on the approval of the tax payers, the whole subject matter is embraced in and regulated by Article 214, and the Legislature was without power to alter the apportionment or enlarge the authority of the commissioners, so far as the taxing power is concerned.

9. The fund authorized to be raised by Article 214 by the commissioners, is, from its very nature, a special fund for a specific purpose; and the tax by means of which they are to obtain that fund is necessarily a special assessment on property on the basis of benefits. Article 214 is therefore restrictive and limitative upon the authority of the commissioners, who are the immediate mandatories of the people, as regards the imposition of special taxes or assessments for levee purposes. 33 An. 833; 34 An. 506.

10. There is no warrant in the Constitution for the delegation of any taxing power by the Legislature to the district levee commissioners. Const., Arts. 202, 204, 213, 214, 215; 33 An. 833.

11. The word "taxation," in its ordinary or general sense, means the contribution which the citizen is required to make for the support of the government of the State, and the subordinate governments of parishes and municipal corporations. Because a special assessment is called a tax, that fact does not make it a tax in the strict sense of the term. 11 An. 222.

12. There is no kind of analogy between the corporation of a pari h or municipality and the corporation of a levee district. The former are created for governmental purposes, while the latter is established solely to the end of doing certain works and possesses none of the salient attributes of a parochial or municipal corporation. A tax therefore for general parochial or municipal purposes is widely distinct from a local tax for levee purposes, as is the former from a paving tax imposed on property within a subdivision of a city on the basis of benefits. Burrows on Tax., p. —; Cooley, p. —.

2

Munson et al. vs. Board of Commissioners.

13. If we paraphrase Art. 214 and insert City of New Orleans or the parishes of the State, instead of State and similar provisions, as are contained in it, substituting "paving" and "drainage" instead of "levee," the contention that, under the provisions of such an article, the Legislature could rightfully authorize the paving and drainage commissioners to increase the burdens under the pretext of a levy of "special assessments," would be instantly rejected as unworthy of serious consideration. There is no difference between the proposition just stated and the construction of Act 214, contended for by defendants.

14. No constitutional warrant exists for the issue of bonds by district levee commissioners. The objections urged against the other obnoxious sections of the two acts apply with equal force. Article 213 does not contemplate the issue of bonds nor does it authorize the pledge of the 10 mill tax for an indefinite period of time. Their issue would violate Article 215 because the provisions of the two acts are declared irrepealable, and that article ordains that taxation for levee purposes shall cease upon the happening of a contingency explicitly described.

15. The distinction drawn in the numerous decisions of the courts of other States between what are properly termed "special assessments" and the word "tax," in the general sense in which it is used in their different State Constitutions, has no kind of application to the present case, because we do not believe that there exists in the Constitution of any other State provisions similar to those contained in Article 214. If such there be, our researches have failed to discover any judicial construction or interpretation thereof.

16. Independently of the question of constitutionality, the enforcement of the obnoxious provisions of Acts 95 and 97 would be in the highest degree burdensome and oppressive. Taxation on property, for all purposes, ranging from 38 to 57 mills on the dollar on the assessed valuation, borders closely on confiscation.

17. The issue of bonds is wholly unnecessary, as was the imposition of the acreage and produce taxes. The Atchafalaya Basin District contracted for levee work to the amount of $250,000, as stated in the answer, and the funds available will amount to $260,000. In the Pontchartrain District the contracts amount to $124,000, and the available funds to $140,000. And in each case the amount of available funds is exclusive of any acreage or produce tax.

18. The necessity for judicial relief, as prayed for by the plaintiffs, is urgent; if the bonds are permitted to go out, the evils complained of will be past remedying, and the injury will have become irreparable.

*O. O. Provosty* for Defendants and Appellees:

1. If the Atchafalaya Basin Levee District were the private property of a practical business man he would either build no levees at all, or build safe ones, regardless of the cost. He would not run the risk of both failing to accomplish his purpose and losing the money spent in the attempt. Levees are indispensable; the Constitution ordains the building of them; the object of Act 97 of 1890 is to provide sufficient means to build safe levees; therefore in passing that act the Legislature has but acted as a good administrator and obeyed the constitutional behest.

Munson et al. vs. Board of Commissioners.

2. The assessments levied by the act are not violative of Articles 203, 214 and 242 of the Constitution, on the subject of taxation. Local assessments for public works, levied, not on taxable property generally for common public benefit, but only on particular property specially benefited by the works as an equivalent for the direct benefit conferred, although an exercise of the taxing power, are not considered as taxes within the scope and meaning of constitutional restrictions on the general power of taxation. Excelsior Co. vs. Green, Tax Col., 39 An. 455.

3. Local assessments are, as a general rule, levied on land alone; but this is only because land is the kind of property which is usually benefited; but there exists no such constitutional or other restriction on the legislative power; and when particular personal property has enjoyed a benefit from the works to which it owes its existence and preservation, nothing prevents the Legislature from assessing it. Excelsior Co. vs. Green, 39 An. 455.

4. Article 44 of the Constitution, prohibiting the General Assembly from contracting a debt in behalf of the State, applies to the State alone, and not to her political and municipal subdivisions. Excelsior Co. vs. Green, 39 An. 455; New Orleans vs. Grailhe, 9 An. 561; Dill. Mun. Corp., Sec. 138.

5. Neither in the language of the amendment to Article 214 of the Constitution, nor in the history of the adoption of that amendment, is there to be found anything whatever to indicate an intention to withdraw from the Legislature the power to levy local assessments for local benefit.

6. The same Legislature which framed and adopted that amendment passed Act — of 1866, conferring upon the Fifth Levee District power of local assessment. This is a legislative interpretation of that amendment of the most satisfactory character.

7. The bonds of the several levee districts having passed into the hands of the public, and a large number of contracts for levee work having been given out and accepted, and partly performed, on the faith of the interpretation of the Constitution adopted in the cases of Charnock vs. Fordoche, etc., Levee Company, and Excelsior Co. vs. Green, and the Legislature having acquiesced in and acted upon that interpretation, it has become, as it were, a rule of property; it has become, as it were, incorporated in the Constitution, and should not now be changed.

8. By express provision of Act No. 106 of 1890, Section 56, upon dissolution of an injunction restraining the collection of the revenue, the plaintiff in injunction must be condemned to pay damages equal to 10 per cent of the amount of his taxes.

*Reed & Goodale* on the same side.

The opinion of the court was delivered by

WATKINS, J. These various consolidated causes are injunction proceedings taken against the Board of Commissioners of "the Atchafalaya Basin Levee District" to prevent them from levying certain acreage and produce taxes, and from issuing certain bonds—all in pursuance of the provisions of Act 97 of 1890.

The ground of the plaintiffs' resistance is that the act is unconstitutional and void, for the reason that its provisions authorizing the acreage and produce taxes, and the issuance of bonds, conflict with and are violative of Article 214 of the Constitution and its amendments, and Article 215.

The levy of these taxes is assailed on the further ground that same are burdensome, oppressive and virtually amount to confiscation. Judgment went in favor of the defendants in each of the several cases in the District Court, and the various plaintiffs have appealed, and unite in one transcript.

## I.

In so far as may appertain to the unconstitutionality of the act in question, in respect to Article 214, we collate from the briefs of appellants' counsel the following synoptical statement of the grounds on which they rely, viz:

1. That the sole and exclusive authority of the levee commissioners to levy taxes in their respective districts for levee purposes is derived from Article 214 of the Constitution.

2. That Article 214 restricts and limits the authority and power of the levee commissioners to a levy of ten mills on taxable property situated within the alluvial portions of the district subject to overflow.

3. Authority to levy taxes on specified property, within specified limits within the levee district, being conferred by the Constitution *directly* on the levee commissioners, the Legislature is without power to enlarge or extend that authority.

4. That the tax authorized by Article 214, from its very nature, the object of the levy, the purpose to which the proceeds are to be devoted, and the situation and nature of the property on which the levy is to be made, is a local tax or special assessment.

5. There is no warrant in the Constitution for the exercise of *any* taxing power by levee commissioners, by special assessment or otherwise, under and by virtue of any *direct* authority from the Legislature.

Article 214 reads as follows, to-wit: " The General Assembly may divide the State into levee districts and provide for the appointment or election of levee commissioners in said districts, who shall, in the manner and method to be provided by law, have supervision

of the erection, repairs and maintenance of the levees in said dis-
tricts; to that effect it may levy a tax not to exceed five mills on,·
the taxable property situated within the alluvial portions of said
districts subject to overflow."

In 1884 an amendment to this article was submitted, and same·
was subsequently adopted by the people.   It reads as follows:

"The General Assembly may divide the ˪tate into levee districts,
and provide for the appointment or election of levee commissioners
in said districts, who shall, in the method and manner to be provided,
by law, have supervision of the erection, repair and maintenance·
of the levees in said districts; to that effect the levee commission-
ers may levy a tax not to exceed ten mills on the property situated,
within the alluvial portions of said district subject to overflow; pro-
vided that in case of necessity to raise additional funds for the
purpose of constructing, preserving and repairing any levees pro-
tecting the lands of a district the rate of taxation herein limited
may be increased when the rate of such increase and the necessity
and purpose for which it is intended shall have been submitted to
a vote of the property tax payers of such district, paying taxes for
himself, or in any representative capacity, whether resident or non-
resident, or property situated within the alluvial portion of said
district subject to overflow, and a majority of those in number and,
value voting at such an election shall have voted therefor."   Act
112 of 1884.

The following alterations in the text of the article were made,,
viz: The word "it" is omitted, and in its stead the words "the
levee commissioners" are employed, and the word "five" is omitted
and the word "ten" is inserted in its place.   To this article, as
thus altered, the proviso contained in the act of 1884 is added.

While it is true that the court has twice examined and construed
the provisions of the original article, in reference to the particular
subject matter under consideration—Charnock vs. Levee Company,,
38 An. 323, and Planting and Manufacturing Company vs. Tax Col-
lector, 39 An, 455—the plaintiff's counsel press a serious argument
against the correctness of the principles therein announced; and
insist, further, that if they be correct, they are inapplicable to the
provisions of the amendment of that article.   They further contend,
that, had the amendment formed a part of Article 214 at the time·

those opinions were rendered, in their opinion a different result would have been reached by this court.

It will be observed that no assault is made upon the ten mill district levee tax assessed by the levee commissioners under and in pursuance of Article 214; but the plaintiffs' injunction is directed *specifically* against the acreage and produce taxes, which are authorized by the provisions of Act 97 of 1890, the unconstitutionality of which statute is grounded on the theory that Article 214, as it is amended, provides for a *local assessment*, and not a *tax eo nomine*, and therefore under the *proviso* of this amendment " additional funds for the purpose of constructing, preserving and repairing levees " could not be raised until same had been first duly authorized by a vote of the property tax payers of the district, and in the manner directed in Act No. 8 of 1888; said Act 97 of 1890 having made no such provision, and having delegated the power to levy said produce and acreage assessments directly to the levee commissioners without the constitutional power so to do.

Therefore the principal question for our determination is, the purport and meaning of said amendment; and in so doing to determine whether it limits and restricts the legislative power to authorize local assessments.

Counsel insist that the question thus presented is *res nova*, and not covered by the Charnock and Excelsior Planting Company cases.

The best way to test the correctness of this view is to briefly examine the opinions in those cases and compare the principles on which they are founded with the theory of the plaintiffs' counsel in this respect.

Stated concisely, the question is whether the amendment authorizes the levy of a *tax* or a *local assessment;* for if it authorizes the former, the power of the Legislature is limited; and if it authorizes the latter, it is unlimited.

In the Charnock case the principal question dealt with and determined was whether or not the power of local assessment was governed by the precepts of the Constitution or resided in the Legislature; and we held that the provisions of the Constitution did not control it.   In the decision of that case strong reliance was placed upon the decision of this court in Board of Levee Commissioners vs. Lorio Bros., 33 An. 276, in which a similar issue was raised and decided; but it was insisted that same was not strictly applicable,

Munson et al. vs. Board of Commissioners.

because it was predicated on legislative enactments of 1876 and 1877, authorized under the Constitution of 1868, whereas the Charnock case arose under an act passed since the adoption of the Constitution of 1879, and related to an assessment made in 1884. The court, in speaking of this contention of plaintiffs' counsel, said:

It "is technically correct, in the limited sense, that the particular question as to whether *local assessments*, of the character here presented, are governed by the provisions of the present Constitution on the general subject of taxation has not yet been distinctly decided.

" After much reflection, however, we conclude that the principles on which such contributions were excluded from the operation of similar provisions in former Constitutions apply equally to that now in force "—in effect deciding that the cited case was strictly applicable in principle.

The court then held that " the exaction of such contributions was an exercise of the taxing power in its broadest sense," though not controlled by statutes and constitutions on the subject of taxation, holding with Mr. Burroughs that such assessments are " not imposed in the exercise of the general taxing power," but that " the word tax or taxes," as used in constitutions and statutes, " was not intended to include local assessments." Burroughs on Taxation, Sec. 5.

It further said of the opposite view that " in the course of time the matter has been considered over and over again in our own courts and in the courts of our sister States, and by an inveterate course of decision, with rare exceptions, it has ripened into a settled principle of constitutional construction that local assessments or contributions provided for the purpose of constructing public works for the advantage of particular districts, and levied on property benefited thereby, and with reference to such benefit, *are not considered as taxes within the meaning of constitutional restrictions on the power of taxation.*" (Italics are ours.)

In support of these views numerous authorities are cited, and on the faith of which we said:

" We are bound to assume that this principle was present to the minds of the framers of our present Constitution, and that they were well aware that, *in the absence of special provision to that effect, the restrictions which they placed upon the exercise of the taxing power would not be considered as applicable to assessments of this character.*

"We have carefully scrutinized the unusually elaborate provisions on the subject of taxation, and the careful restrictions which have been placed upon the taxing power of the State, of parishes, and of municipalities, not only for general purposes of government, but also for works of public improvement; *but we find none which cover, or exclude local assessments of the character presented in this case.* Such assessments are not to be confounded with ordinary local taxation."

The court then cites from Burroughs on Taxation the following extract, viz:

"A *tax* for the local purposes of a county is imposed upon the persons or property within the county, as distinguished from other parts of the State, but it is *usually* imposed on all the subjects on which the State imposes a tax for State purposes. In *local assessments*, on the contrary, the tax is imposed on the real estate alone, and only on such real estate as is benefited by the local improvement. * * The benefit of the improvement is *not only local, but also specific, benefiting particularized property*, and, therefore, the tax may be levied on this property which receives a benefit. * * Assessment is not considered as a *burden*, but as an *equivalent* or *compensation* for the enhanced value which the property derives from the improvement." P. 460.

"When we closely examine the provisions of our Constitution, we find that they apply only to ordinary local *taxation, levied in particular districts, it is true, but levied on all taxable property within such districts without reference to special benefit to particular property.* Such taxation must submit to the restrictions imposed thereby.

\*    \*    \*    \*    \*    \*    \*    \*

"But *these provisions have no application to that kind of taxation*, which falls under the denomination of *strict local assessments which are not levied upon taxable property generally*, for the common public interest, but upon *particular property specially benefited, as an equivalent for the benefit conferred.*

*Assessments of this kind are not referred to in the provisions of the Constitution, upon the subject of taxation, which relate only to taxation upon property generally, whether throughout the State or within particular districts.*"

In the foregoing quotations we have italicized the pertinent points

with the view of giving them prominence, and of pointing the argument, particularly.

In the Planting and Manufacturing Company case plaintiffs enjoined the execution of the provisions of Act 14 of 1886, creating "the Board of Commissioners for the Fifth Louisiana Levee District," and defining the powers and duties of certain levee commissioners; and one of the plaintiffs' principal contentions was that said act violated the provisions of the 214th article of the Constitution," because the last clause thereof, authorizing the levy of a *tax* not to exceed five mills, on the taxable property situated within the alluvial portion of said districts subject to overflow, is a provision of the means for the exercise of the prior power granted, and which is *restrictive and impliedly prohibitive of a resort to any other means, and that this prohibition is violated because the act, after authorizing the levy of the five mill tax, proceeds to authorize the collection of certain local contributions or assessments on particular property benefited by the levees.*"

But in considering this proposition we said that "the power granted to levy the five mill tax would be exclusive and prohibitive of any levying of any greater *tax;* but the analogy fails entirely when the effort is made to extend the prohibition to the provision of *other means than taxes.* It is obvious that the object of the last clause of Article 214 *was not to exclude the power of local assessment, but simply to confer the power of taxation.* It was necessary for the latter purpose, because without it such power could not have been exercised, being in violation of other constitutional provisions on the subject of taxation. But the power of local assessment * * * is *exerted entirely independent of this and all other provisions on the subject of taxation.* To hold that the power of local assessment was taken away because the power of taxation was conferred would be to reverse the purpose of the article, and to convert what was evidently intended as the grant of a new and additional power into a distinction of a power already possessed."

Taking up the particular assessments authorized by the act in question, which declare that in case additional funds are needed "to locate, repair and construct levees, so as to prevent disastrous floods, the said board shall have authority to levy a special assessment or forced contribution not to exceed fifty cents per bale on each and every bale of cotton," etc., and which were assailed as

violative of Articles 203, 209, 214 and 242 of the Constitution, we said:

" It is self-evident that if the contributions here involved are embraced within the scope rnd meaning of the words ' taxes ' and ' taxation,' as employed in those articles, they would unquestionably violate both their letter and their spirit."

We then referred to what was said on this subject in the Charnock case, and said:

" On the most careful reconsideration of the question under all of the additional light thrown upon it by the arguments of counsel, and * * * we remain fully convinced of the correctness of our former decision."

In the recent case of Asphalt Paving Company vs. Gogreve, 41 An. —, at page 263, we had under consideration, and decided a charge of unconstitutionality of the charter of the city of New Orleans (Act 20 of 1882), on the ground that the provision thereof which authorized the local assessment of certain property fronting on a street recently paved was violative of Article 209 of the Constitution as an exercise of the taxing power.

On this question we said, quoting the article: " These provisions have exclusive reference to the *ad valorem* taxation of all the property of the inhabitants of the city for purposes of *revenue* only;" and we quoted from Mr. Cooley a pertinent definition to the effect that " special assessments are *a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes*, and governed by principles that do not apply generally. The general levy of taxes is understood to exact contributions in return for general benefits of government, and it promises nothing to the person taxed beyond what may be anticipated from an administration of the laws for individual protection and the general good.

" Special assessments, on the other hand, are made upon the assumption that a *portion* of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy they demand that the special contributions, in consideration of the special benefits, shall be made by the persons receiving it."

We then announced our concurrence in the principles of the

Charnock and the Planting and Manufacturing Company cases, and affirmed them both.

Those cases were carefully considered, and, by an unanimous court, were decided upon a due consideration and full review of *all* authorities bearing on the subject. They treat fully of the distinction between the terms " *tax* " and " *local* assessment;" and of the exercise of the taxing power, under Article 214 of the Constitution, and under statutes similar in purport to the one under consideration; and they uphold the validity and constitutionality of the latter, because of the difference which existed between a local assessment and a tax.

It is our deliberate conviction, after a careful reconsideration of them, and of the authority on which they are bottomed, that the principles announced are correct, and they are, therefore, unreservedly affirmed.

Accepting them as correct, we find the following propositions established, viz:

1. That a tax for the local purposes of a particular district of country is imposed on the persons domiciled, or property therein situated, as distinguished from other parts of the State; and it is usually imposed upon all the subjects on which the State imposes a tax, *within that particular district of country,* for State purposes, without any attention being paid to the benefits to be conferred. Such a tax is the one provided for and contemplated in Article 214 of the Constitution.

2. A local assessment, on the contrary, is a contribution for the purpose of constructing works of public improvement, for the advantage of a particular district, and not to be levied upon taxable property generally, but upon *"particularized property"* to be benefited thereby, and with direct reference to such benefit as this property may receive.

3. The levy of a local assessment is an exercise of the taxing power, in its broadest and most comprehensive sense; yet it is not a tax *eo nomine,* and is not governed by the provisions of the Constitution on the general subject of taxation; but it is exerted entirely independent of all its provisions on the subject of taxation.

4. A local assessment is not considered a burden, but as an equivalent or compensation for the enhanced value which property peculiarly situated, as respects a contemplated improvement, may derive

therefrom—a peculiar species of taxation, standing apart from the general burdens imposed for State and municipal purposes, and which is governed by principles that do not apply generally.

The purpose and effect of which is that a " tax," whether general, special or particular, is a *burden*, while a *local assessment* is an imposition laid upon " *particularized property* " which, it is supposed on the part of the Legislature, will be specially benefited by the expenditure of the fund to be realized, in improvement thereon. Such an assessment is not considered as a *burden* on the tax payer, but as an *equivalent* taken from the particular property, the value of which is enhanced thereby.

Whether particular property will be benefited at all, and to what extent it should be thus locally assessed, are purely political questions with which the Legislature is certainly most competent to deal, and why should not the people *trust* in its discretion and competency to determine them judiciously ?

When, however, a question arises of the necessity for increasing the *burdens of taxation*, for *any* purpose whatever, it is meet and proper that the property tax payers of the district within which the increase is proposed should be consulted.

And we take it to be quite a significant circumstance that there was incorporated in the amendment to Article 214 the identical *proviso* contained in Article 209, directing that any increase " of the rate of *taxation therein limited* " should be the first submitted to a vote of the property tax payers.    It seems to be indicative of the similarity of the taxing power which is conferred in each article; each being designed for similar specific purposes—the erection of a court house, or the construction of a levee.

By the amendment two important changes in Article 214 are made, viz: (1) An increase in the rate of taxation therein limited from five to ten mills; and (2) a proviso whereby there might be obtained a further increase, by submitting the question of such increase to a vote of the property tax payers of the levee district.

The language employed in the *proviso* of the amendment clearly indicates that it is an increase of the ten mill tax, which is provided for in the *body* of the amendment, that was contemplated.    The proviso declares " that in case of necessity to raise additional funds for the purpose of constructing, preserving and repairing any levees protecting the lands of a district, *the rate of taxation herein limited*

may be increased," etc. . And it is equally true that the rate of taxation therein limited is the rate of taxation of five mills stipulated in the original article, which in the body of the amendment is raised to ten mills.

But plaintiffs' counsel strenuously deny that any such parallel exists between the provisions of Article 209 and the amendment to Article 214, as we suggest, and insist, on the contrary, that there is a manifest distinction between the general tax which a municipal corporation is authorized to levy on all property within its limits for governmental and administrative purposes, and the *special assessments*—as they term them—which may be imposed within *subordinate divisions* of municipal territory. This argument is based principally upon the text of the amendment which provides that the tax therein provided for is to be levied *only* " on property situated within the alluvial portion of said district subject to overflow," etc ; and of it, counsel say in their brief: " Therefore the underlying principle in Article 214 is that the *high lands* shall be excluded from district contributions, and that the burden shall be borne by property within the alluvial portions of the district subject to overflow."

Hence they contend that " Article 214 imports the levy of *a special assessment* for local purposes, because it is for a *specific object* and on specified property within *prescribed limits*, on the basis of benefits—that is, on the property situated within the *alluvial portions* of said district *subject to overflow*." Page 37.

Act 14 of 1886, which we had under consideration and treated in Planting and Manufacturing Company case, contained precisely the same language as that of the amendment, and which was assailed as unconstitutional, because in violation of Article 214, though for somewhat different reasons from those urged here; but the complaint was not favorably entertained.

While it is true that the tax specified in the Article and amendment is *only* to be laid " *on property* situated within the alluvial portions of the district subject to overflow," and is to be levied for the specific purpose of " constructing, preserving and repairing the levees protecting the land of a district," it is but a " *tax* " for the *local purposes* of that district of country, and is imposed on the *persons* therein domiciled, and the property therein situated, and upon all the subjects on which the State imposes a tax for State purposes. It is not a " *local assessment* " for the construction of a

particular work, and intended to be levied upon particularized property to be benefited thereby. It is in the nature of a burthen, and does not proceed upon the theory of *benefit* to the property to be assessed.

But learned counsel inquire, "How could a 'necessity to raise additional funds' and to increase the rate of taxation for levee purposes ever arise if the Legislature possesses unlimited power to authorize the levee commissioners to levy unlimited acreage taxes and taxes on products for the identical purposes under the transparent disguise of a mere name or designation." Brief, pp. 41 and 42.

We will assume, and we think with just propriety, that the Legislature will not act unwisely, harshly or injudiciously in the exercise of its practically unlimited authority in the exertion of the taxing power for the purposes of local assessment; nor indeed that same will be used at all, unless it be satisfactorily determined that the ten mill tax authorized by the amendment is insufficient. And it is only in the event that the tax and relief by local assessment are found inadequate for levee purposes that an increase of the rate of taxation beyond the ten mills should be proposed to the property tax payers. That is a *dernier resort*.

Our conclusion is, that the tax provided for in the constitutional amendment to Article 214 is not a local assessment, and the legislative act injoined is valid and constitutional.

II.

The next proposition for consideration is the alleged unconstitutionality of that provision of the act which authorizes the issuance of levee bonds. Plaintiffs' contention is, "that there is not only no warrant in the Constitution for the authority granted by the legislative" act in question   *   *   *   "to the levee commissioners to issue bonds, but same is in violation of Article 215, which fixes a period to the duration of the taxing power for levee purposes." Brief, p. 46.

Their argument is, that no authority *can* be vested in levee commissioners to raise funds for levee purposes, beyond what is conferred upon them by Article 214, and which is, necessarily, *exclusive* of every other. It is further to the effect that the legislative authority delegated to the commissioners to issue bonds is in con-

travention of Article 215 of the Constitution, which provides that levee taxation shall cease upon the happening of a contingency therein specified.

In addition to the foregoing, various other specific objections are urged to the bonds themselves, and to the terms of the act, as appertaining thereto. For instance, that the authority to issue bonds, and pledge therefor the levee taxes, for an *indefinite* period of time, is contrary to the genius and spirit of the Constitution. That the Legislature had no constitutional authority to authorize the levy of a tax beyond the term of its own constitutional existence. That the Legislature was without constitutional authority to empower the levee commissioners to encumber the taxable property within the levee district with a tax levy for an unlimited amount, and for an *indefinite* time. That the Legislature was without constitutional authority to enact, that "in no event shall the tax assessed and levied for the payment of said bonds be *reduced, repealed* or *abated* until each of said bonds * * * shall have been fully paid off and extinguished."

Through the instrumentality of this legislation, plaintiffs charge that the General Assembly has practically "invested the levee commissioners with perpetual existence, and with powers which are not only in flagrant disregard and violation of Articles 214 and 215, but would forestall and paralyze the future action of the Legislature during the period of at least one generation." Brief, p. 49.

We think that the apprehension of such dire consequences is not well founded.

The Legislature was evidently authorized by Article 214 to "divide the State into levee districts," and to "provide for the appointment or election of levee commissioners in said districts."

That article undoubtedly declares that the levee commissioners "shall, in the method and manner *to be provided by law*, have supervision of the erection, repairs and maintenance of the levees in said districts."

It also authorized the commissioners to levy a tax. From what has been said in a preceding paragraph of this opinion, it is also manifest that, as the Legislature had unlimited power in the matter of local assessments, independently of the Constitution, it had a perfect right to impose such penalties and confer such liens and privileges as might be necessary to enforce their collection; and it

had an equal right and authority to dedicate the funds, when realized, to levee improvement, and confide them to the levee commissioners' control and administration.

In the *very* nature of things the board of levee commissioners were intended to be—and should have been—of long-continued existence, because of the character of the undertaking proposed; and it was manifestly necessary that the tax authorized by the amendment to Article 214 of the Constitution should have equal duration as the bonds themselves.

The General Assembly, in all likelihood, found it necessary, and deemed it expedient, to provide means whereby money could be raised and placed in the hands of the levee commissioners, so that levee construction might not be hindered and delayed by delinquent tax collections.  Of this question it was a competent judge.  What other expedient *could* have been resorted to than that of authorizing the commission to issue and hypothecate district levee bonds? For this purpose the Legislature was capacitated to provide.

As we said of similar bonds, in the case of Planting & Manufacturing Co. vs. Tax Collector, 39 An. 459, we hold in this:

" The bonds authorized to be issued by the corporation are issued for its own exclusive purposes and benefit."

They are not bonds of the State.  We are of the opinion that the bonds in question are of unquestionable validity, and that the Legislature had constitutional authority for its enactment.

In so far as the alleged violation of Article 215 is concerned, we can not see the force or pertinency of the contention.

The provision of that article, relied upon, is as follows, viz:

" The provisions of the above *two* articles shall cease to have effect whenever the Federal government shall assume permanent control, and provide ways and means for the maintenance of levees in this State."    Article 215.

It is certainly manifest that the Federal government has not, as yet, assumed " permanent control " of the levees in this State, and that it has not, as yet, provided "ways and means" for their maintenance.   There appears to be not even a *likelihood* that it will do so at an early date.   Then, the constitutionality *vel non* of the act in this respect depends *upon* a *contingency* that may or not happen in the *future;* and *that is conclusive*. against the charge of unconstitutionality preferred against it.

The quoted provision of Article 215 applies to the *two* preceding articles, 213 and 214, alike; and it is difficult to perceive why the objection of unconstitutionality of the *whole* statute was not preferred; and, also, a claim made that those articles had themselves become inoperative, if plaintiffs' theory were true. This argument proves too much. This contention is groundless.

Our conclusion is that the judgment appealed from is correct, and it is therefore affirmed.