(50 South. 609.)

No. 17,766.

LOUISIANA RY. & NAVIGATION CO. v. MADERE, Sheriff and Ex Officio Tax Collector.

(Nov. 2, 1909.)

1. TAXATION (§ 196*) — EXEMPTIONS — TAXES AFFECTED BY.

The general temporary exemption of new railroads from "taxation," as granted in article 230 of the Constitution of 1898 and in the constitutional amendment of 1904 (Laws 1904, p. 19, No. 16), includes all ad valorem district levee taxes, but not local assessments, such as acreage and produce taxes and the mileage tax levied on railroads.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 196.*]

2. CONSTITUTIONAL LAW (§ 9*)—STATE CONSTITUTION—SUBMISSION TO POPULAR VOTE.

The railroad tax exemption set forth in article 230 of the Constitution of 1898 does not violate any of the restrictions enumerated in the enabling act (Act No. 52, p. 85, of 1896), and said act has no application to the constitutional amendment of 1904, under which the plaintiff claims exemption from ad valorem taxes.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 9.*]

3. CONSTITUTIONAL LAW (§ 6*)—POWER TO AMEND STATE CONSTITUTION—LIMITATIONS.

The power of the people to amend or revise their state Constitutions is limited only by the prohibitions contained in the Constitution of the United States,· none of which have been pleaded in this case.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 2; Dec. Dig. § 6.*]

4. TAXATION (§ 206*)—EXEMPTIONS—CONSTITUTIONAL.

The delegated power conferred on a political agency or corporation to levy a tax on all the taxable property within a certain district does not extend to property which comes into existence under the shelter of a constitutional exemption from taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 338; Dec. Dig. § 206.*]

(Syllabus by the Court.)

5. TAXATION (§ 1*)—"TAX" DEFINED.

A "tax" has been variously defined as a burden, or charge imposed, or proportional contribution levied, by the sovereign, for the support of the government and for all public needs or purposes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 8, pp. 6867–6886, 7813.]

Appeal from Twenty-Eighth Judicial District Court, Parish of St. Charles; Prentice E. Edrington, Judge.

Action for an injunction by the Louisiana Railway & Navigation Company against A. Madere, Sheriff and Ex Officio Tax Collector. Judgment for defendant, and plaintiff appeals. Reversed.

Foster, Milling & Godchaux and Alexis Brian, for appellant. Walter Guion, Atty. Gen., L. H. Marrero, Jr., Dist. Atty., E. B. Talbot, and R. G. Pleasant, for appellee.

LAND, J. By Act No. 16, p. 19, of 1904, the General Assembly submitted to the electors of the state a proposed constitutional amendment, reading, in part, as follows, viz.:

"There shall be exempt from taxation for a period of ten years from the date of its completion, any railroad or part of railroad that shall have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909."

This proposed amendment was adopted at the general election holden on November 8, 1904.

It is admitted that the plaintiff company has earned this exemption by the construction and operation of its roadway from Baton Rouge to New Orleans; but it is denied that the word "taxation," as used in said amendment, embraces the taxes levied by the board of commissioners of the Pontchartrain levee district on plaintiff's railroad in the parish of St. Charles.

Said board by resolution "levied a special assessment or forced contribution" of $100 per mile on each and every mile of railroad, and "a special levee tax of ten mills ad valorem" on all real estate and other taxable property, within said levee district.

The plaintiff company admitted that it owed the forced contribution of $100 per mile, and also taxes on a certain lot of ground, and tendered to the tax collector the amount of the same, but claimed exemption from the ad valorem levee tax of 10 mills.

The tax collector proceeded to advertise the property of the plaintiff for sale for the satisfaction of all the taxes mentioned, with interest, penalties, and costs.

Plaintiff thereupon applied for writs of injunction, and, after hearing the parties on a rule nisi, there was judgment rejecting the plaintiff's demand, and ordering the tax collector to proceed with the collection of all the taxes assessed against the plaintiff, together with penalties and costs.

Plaintiff has appealed, and the only real question for review is whether the exemption from taxation granted by the constitutional amendment of 1904 includes the special ad valorem tax levied by the commissioners of the levee district on all the taxable property within the district.

As "taxation" means the act of levying or imposing taxes, an exemption from taxation embraces all kinds of taxes. A "tax" has been variously defined as a burden, or charge imposed, or proportional contribution levied, by the sovereign, for the support of the government and for all public needs or purposes. See Bouvier, Law Dictionary (Bawle's Revision) verb. The term "tax" is comprehensive enough to cover the entire exercise of the taxing power; but it is now settled that local assessments of a certain kind, though laid under the taxing power, are not taxes in the ordinary sense of the term. Cooley on Taxation, p. 456.

"But this statement can only be applicable when the assessment is really made on the basis of special benefits which are supposed to be equivalent, for, if it is laid for a work of general utility, in the advantages of which the person assessed participates only as one of the general public, and not as receiving special benefits, it must be considered a general tax, and is improperly designated as an assessment." Id.

In the very case before the court, we find a special assessment of $100 per mile of railroad based on supposed special benefits, and an ad valorem tax levied on all the taxable property in the levee district based on supposed general public benefit.

According to the principles announced by Judge Cooley, the first is a local assessment, and the second is a "tax" in the proper sense of the term.

Article 214 of the Constitution of 1879 authorized levee commissioners to levy a tax not to exceed 5 mills on the taxable property situated within the alluvial portions of levee districts subject to overflow. By amendment adopted in 1888 (Laws 1888, p. 8, No. 8), the limit was raised to 10 mills, and it was further provided that the rate of taxation might be increased by a vote of the property taxpayers of the district paying taxes for himself or others.

By Act No. 95, p. 99, of 1890, creating the Pontchartrain levee district, its board of commissioners was empowered to levy annually all district levee taxes authorized by article 214 of 1879 as amended, and it was

made the duty of the assessor to extend said tax on the tax rolls, and the duty of the tax collector to collect said tax in the same manner that state taxes are collected, and to settle therefore with the auditor and State Treasurer.

The same act authorized the board of commissioners to levy a "special assessment or forced contribution" on certain lands, sugar, molasses, rice, cotton, and on railroads at the rate of $100 per mile of main line within the district.

In this act the lawmaker makes a clear distinction between district levee taxes, to be levied and collected on property generally in the same manner as state taxes, and special assessments or forced contributions to be levied on particular property considered to be specially benefited by the maintenance of the levee system.

This distinction has been recognized and enforced by the Supreme Court of the state in a number of cases.

In Planting & Manufacturing Co. v. Tax Collector, 39 La. Ann. 455, 1 South. 873, it was contended that certain local contributions and assessments on particular property benefited by the levees violated Article 214 of the Constitution of 1879, limiting levee taxes to five mills. The court, inter alia, said:

"It is obvious that the last clause of article 214 was not to exclude the power of local assessment, but simply to confer the power of taxation, because, without it, such power could not have been exercised, being in violation of other constitutional provisions on the subject of taxation."

This decision placed levee taxes squarely on the plane of other general taxes authorized by the Constitution of 1879. The same court had already, in Charnock v. Levee Company, 38 La. Ann. 325, drawn the distinction between the levee tax and the levee special assessment, and had held that the former was "ordinary local taxation, levied in particular districts, it is true, but levied on all taxable property within such districts without reference to special benefit to particular property," and that the provisions of the Constitution of 1879 had no application to "that kind of taxation that falls under the denomination of strict local assessments, which are not levied on taxable property generally for the common public interest, but upon particular property specially benefited as an equivalent for the benefit conferred."

In the well-considered cases of Munson and Others v. Board of Commissioners, 43 La. Ann. 15, 8 South. 906, all the authorities were reviewed, and the court held that the ad valorem levee tax was a "tax" for the local purposes of the district, and was not a "local assessment" intended to be levied upon "particularized property to be benefited thereby."

The same distinction between a tax for local purposes and a local assessment was announced in Construction Co. v. Tax Collector, 108 La. 435, 32 South. 399, 58 L. R. A. 349, and in Louisiana & Northwestern Railroad v. State Board of Appraisers, 120 La. 471, 45 South. 394.

The settled jurisprudence of this state on this subject renders it unnecessary for the court to consider the numerous authorities from other jurisdictions cited in the very able brief filed by counsel for the defendant.

All the provisions of the Constitution of 1879 relative to taxation for levee purposes were incorporated in the Constitution of 1898. The term "tax," as used in article 214 of the Constitution of 1879, had been judicially construed to mean an ordinary tax, and, with this fixed construction, was incorporated in article 239 of the Constitution of 1898. It is an established rule of construction that where a constitutional provision has received a settled judicial construction, and is afterwards incorporated into a new or revised Constitution, it will be presumed to have been retained with a knowledge of that construction, and the courts will feel bound to ad-

here to it. See 8 Cyc. 739; State v. Board of Assessors, 35 La. Ann. 651.

Hence there is no difficulty in reaching the conclusion that the term "taxation," as used in article 230 of the Constitution of 1898, and in the constitutional amendment of 1904, includes local ad valorem district levee taxes, and consequently that the plaintiff railroad is entitled to the exemption claimed in this suit.

Counsel for the defendant contend that the power of the convention of 1898 to exempt railroads from levee taxation was denied by Act·No. 52, p. 85, of 1896, providing for the submission to the people of a proposition to hold a convention at a designated time and place for the purpose of framing a new Constitution, fixing the powers of the convention, etc. This enabling act, which was subsequently adopted by the people, prohibited the convention from enacting any ordinance or article affecting, impairing, or scaling the bonded indebtedness of the state, increasing the rate of taxation, removing the Capitol, etc., etc. Among these prohibitions was the following:

"Whereby the levee system as now organized under and by virtue of article 213 to 216 inclusive and 270 of the present Constitution, and the laws enacted in pursuance thereof shall be altered, amended or affected."

As the convention of 1898 adopted all of the articles referred to in the above paragraph and incorporated them in the Constitution of 1898, and in the schedule declared "that no failure on the part of the convention to re-enact, and re-ordain any article or ordinance contained in the Constitution of 1879 upon any of the subjects upon which this convention is by the act convening it prohibited from enacting, ordaining or framing any article or ordinance, shall be construed as in any manner affecting the provisions of the Constitution of 1879 upon the prohibited subjects," it is difficult to conceive how or in what manner the levee system of the state

124 LA.—21

was altered, amended, or affected. It is argued, however, that the exemption from taxation of railroads to be constructed in futuro deprived the levee boards of the right to tax the same kind of property conferred on them by article 214 of the Constitution of 1879. The right so conferred was on the taxable property situated within the levee district, and whether or not certain property is taxable is to be determined from time to time under the Constitution and laws of the state. This is not the case of an exemption of property already·subject to levee taxation, but of property that came into being under the shelter of a constitutional exemption.

In Louisiana & A. Ry. v. Shaw, 121 La. 997, 46 South. 994, this court said:

"But, however this may be, whatever rights the voting of the tax conferred on the railroad company were contingent and prospective. The tax, if earned, was to be levied on whatever taxable property might be found in the parish after the completion of the road.

"The question of the taxability of property in futuro was necessarily left to the determination of the sovereign.

"A few months after the voting of the tax, the Constitution of 1898 was adopted. The framers of that instrument, in order to encourage the construction of new railroads, offered a bonus in the form of an exemption from taxation for 10 years. The plaintiff railroad accepted this offer, and by the timely construction of its road earned the bonus or exemption. Hence the plaintiff railroad came into existence under the shelter of the constitutional exemption,· and is not and has never been taxable property in the parish of Winn."

We see no good reasons to change the views thus expressed.

While we are of the opinion that article 230 of the Constitution of 1898· does not, in letter or spirit, violate the restrictions of the enabling act of 1896, we cannot see how such restrictions are applicable to the constitutional amendment of 1904 adopted under another enabling statute which contains no restrictions or conditions of any kind. See Act No. 16, p. 19, of 1904. The legislative department of the state has no power to pass any irrepealable law. Cooley's Const. Lim. (7th

Ed.) p. 174. The power of the people to amend or revise their Constitutions is limited only by the prohibitions set forth in the Constitution of the United States. Id. p. 62. It is not pleaded by the defendant that the constitutional amendment of 1904 is violative of any provision of the federal Constitution. It follows that said amendment is a paramount law, binding on the state, and on every governmental subdivision and political agency of the state.

The Constitution of 1852 inaugurated the public policy of state aid in the construction of public improvements. This policy has been adhered to in all subsequent state Constitutions. The Constitution of 1868 contained no limitations whatever on the legislative power to aid in the construction of public improvements. The reform Constitution of 1879 limited such aid to special taxes not exceeding five mills and for a period not longer than 10 years, when voted by a majority, in number and amount, of the property taxpayers of the parish or municipality. The same limitations were incorporated in the Constitution of 1898, and the framers of that instrument, to further encourage the construction of railroads, offered a general exemption from taxation to new lines of railway that might be completed within a certain period of time, except such railroad as had already been voted a tax subsidy. Such tax exemption was but another mode of aiding railway enterprises.

The plaintiff railroad has earned this tax exemption by the construction of a new railroad through the parish of St. Charles, and has thereby brought within the levee district additional property now subject to a local assessment of $1,139 per annum, and all of which will within a few years become subject to the ad valorem levee tax of 10 mills on the dollar of valuation. The Pontchartrain levee district has been benefited by the construction of this new railroad in a far greater degree than has the state or parish, and has no just grounds of complaint in law or in equity.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the defendant tax collector be and is hereby forever enjoined and prohibited from collecting the levee tax of 10 mills ad valorem levied and assessed for the year 1907 on the property of the plaintiff company.

And it is further ordered that plaintiff's plea of tender of the other taxes recited in the petition be sustained, and that the defendant be enjoined from collecting any greater sum than the amount tendered.

And it is further ordered that the defendant pay the costs below and the costs of this appeal.