DAWKINS, J.
These two cases involve practically the same points, have been argued and submitted together, and we shall dispose of them in one opinion.
The first involves a contest of a portion of plaintiff’s assessment for the year 1918, and the second a similar assessment for 1919.
Plaintiff is a New Jersey corporation, owning a sugar refinery, plantations, etc., in this state, and has its Louisiana domicile in the city of New Orleans. Its capital stock is owned by the Cuban-American Sugar Company, another New Jersey corporation, with offices in the city of New York, but with no interests in this state other than such as result from its ownership of plaintiff’s capital stock.
In June, 1917, the board of state affairs, which is the’authority of last resort in matters of assessment, subject to. the right of review by the courts, passed a resolution, reading as follows:
“Be it resolved by the board of state affairs that in determining the actual value of notes, judgments, accounts, and credits to be assessed in the state of Louisiana, in accordance with section 7 of Act 170 of 1898, the taxpayer be and he is hereby authorized to deduct from the total amount of notes, judgments, and accounts due him the total amount that he is due himself to other persons, firms, or corporations.
“Be it further resolved that, if the amount of notes, judgments, and accounts due to the taxpayer is in excess oí the amount that the taxpayer is due to other persons, firms, or corporations, the overplus shall be subject to taxation as a credit.
“Be it further resolved that, if the amount of notes, judgments, and accounts due to the taxpayer is less than that amount that the taxpayer is due to other persons, firms, or corporations, the taxpayer shall not be permitted to deduct anything from the inventory of his tangible property to account for the amount due by him.
“Be it further resolved that the total amount of actual tangible property owned by every person, firm, or corporation engaged in the mercantile business shall be considered in determining the value of the business for assessment purposes, and no deductions shall be allowed against such actual tangible property.
“Be it further resolved that, every taxpayer claiming an offset under the terms set out above shall make an affidavit of the amount of debts due by him and to him, and file copy *973 thereof -with the assessors, and one with the board of state affairs.”
On July 13th of the same year, the board addressed to the several assessors of the state a circular letter interpretative of this resolution, in the following words:
“Referring to the question of the assessment of credits, concerning which item the board adopted a resolution permitting the deduction of accounts payable and bills payable against outstanding credits, we wish to call your special attention to the fact that all such deductions are not to be allowed against stock of merchandise, real estate, or other physical, tangible property.
“Furthermore, we would especially call your attention that in ease there should be branch houses of business concerns that may have credits on their books, and should owe accounts for bills payable to the head office, that such bills payable or accounts due by the local branch to the parent or head office should not be deducted from the outstanding office to itself, and no deduction of this class of accounts and bills payable should be allowed.
“Furthermore, we understand some police juries have exempted credits from assessments. Our board cannot grant such exemptions, for the reason that it is contrary to the law, nor has the police jury any authority to grant exemptions, which can only be done by constitutional amendment, and hence this board is compelled to see that such property is duly assessed according to law.”
Plaintiff reported upon its assessment credits or accounts and bills receivable amounting to several thousand dollars, but also showed that it owed the Cuban-American Sugar Company for money loaned, etc., a total greatly in excess of said credits;. and therefore contended that it should not be assessed or taxed upon any such assets. The board declined to allow this offset, as shown by the following letter of August 29, 191S, addressed to plaintiff’s counsel:
“I beg to acknowledge receipt of your favor of the 28th inst., and, in reply, will advise that the law requires all credits to be assessed at the domicile of the company, and while we would like to get the assessment to St: James parish, inasmuch as this company is domiciled in New Orleans, the law requires the assessment to be made' there.. However, no credits were rendered in the parish of St. James any way.
“In reply to your application or petition for' consideration on the assessment of credits, would advise that the same is disallowed, for the reason that it was made after a thorough investigation of the subject-matter.
“Our board takes the position that the Colonial Sugars Company and the Cuban-American Sugar Company of New York is practically the same as the Colonial Sugars Company operating in Louisiana, and that it is practically nothing but a bookkeeping proposition, .and that credits and debits, as between the said companies, should not be considered in connection with.the subject-matter. For this reason, we have fixed the assessment based on the exact amount as furnished to us by the Colonial Sugars Company themselves. We would be very glad to have the matter thrashed out in court, and ascertain whether we are correct or not.”
In due season, plaintiff, having paid all other taxes assessed against it upon its tangible property, brought suit to annul the assessment of credits; and, by amended petition, prayed in the alternative that it.be reduced to such amount as the “court shall find legal and equitable.”
The board denied the right of plaintiff to deduct or offset the debts due the Cuban-American Sugar Company as against its credits, and averred the correctness of its ruling.
A suit involving the same issues (except that the Legislature, in August, 1918, had passed a statute embracing the rule or contention made by defendant) was prosecuted, covering the assessment for 1919, and from adverse judgments by two separate divisions of the court below plaintiff prosecutes these appeals.
Opinion.
The facts are not disputed; and the cases present the following question of law, to wit:
It being conceded that all other taxpayers (including corporations) were permitted by the rule of the board and by the statute (No. 24, Extra Session of 1918) subsequently *976 enacted, to offset credits or accounts and bills receivable with tbe same character of obligations due by them to others, was the board warranted in denying this same right to corporations, both domestic and foreign, the majority of whose stock was owned or controlled by another corporation, or by its stockholders?
That part of the revenue law of the state applicable to this case, which was in force prior to the passage of Act ,24 of 1918, was section 7 of Act 170 of 1898, from which we quote:
' “That it is made the duty of the tax assessors throughout the state to place upon the assessment list all property subject to taxation; * * * and provided further, that in assess_ing mercantile firms, the true intent and purpose of this act shall be held to mean, the placing of such value upon the stock in trade, all cash, whether borrowed or not, money at interest, open accounts, credits, etc., as will represent in their aggregate a fair average on the capital, both cash and credit, employed in the business of the party or parties to be assessed. And this shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere, the intent and purpose being that no non-resident, either by himself or through an agent shall transact business here without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits' arising from the business done in this state are hereby declared assessable in this state, and at the business domicile of said non-resident, his agent or representative. * * * ”
Bor many years after the passage of this ptatute there existed in this state a system of assessment for all purposes (except as to certain public service corporations) by assessors, subject to review by other agencies not necessary to mention in detail; but in 1916, the Legislature enacted a law (Laws 1916, No. 140) creating the board of state affairs, .and prescribing its duties and powers, and providing that it should “take effect in case the amendment to articles 225 and 226 (of the Constitution) proposed at this session in Act- No. 168 shall be adopted in November, 1916.” Section 17.
The important change made in article 225 was such as to permit a different valuation for state purposes from that used for local taxation; and in article 226, the board of state affairs was substituted for the old boards of appraisers and equalizers, and required to “assess, for state purposes, all taxable property throughout the state of Louisiana. It shall have such other authority relative to state assessment, budget, income and expenditure as may be conferred upon it by the General Assembly.” It (article 226 as amended) further declared that Act 140 of 1916 should “go into effect as a statute of the • state on the first day of January 1917.”
Without going into the many duties and powers of the board under Act. 140 of 1916, it is sufficient to say that, with respect to the matter now in contest, it was still governed, prior to the passage of Act -24 of the Extra Session of 1918, by the provisions of section 7 of Act 170 of 1898.
It is a matter of common knowledge, and, as disclosed in cases heretofore appealed to> this court, the board recognized the fact that, if it assessed all credits (accounts, bills, etc.) held by persons, firms, and corporations, indiscriminately, the result would be, in many cases, to compel the payment of taxes upon the same values twice, and perhaps three times or more; for A. might lend to B., and B. might lend to C. the same money or one merchant might sell goods on credit to another, and the latter, in turn, sell to his own customers on time; and the notes representing the two loans, or the accounts for the identical goods, be taxed in the hands of both lenders or merchants; thus piling up taxation, and burdens on the ultimate consumer, without anything having been added to the wealth of the state or its citizens. This condition caused the board *977 to adopt the resolution of June, .1917, hereinabove quoted, which allowed the deduction from such credits or assets of the taxpayer debts owed by him to other persons.
On the other hand, it was also recognized that, if an individual or corporation residing out of the state, but doing business here through agents or 'branches, were permitted to make such deductions for debts due to themselves outside the state, there would result a clear discrimination against the local taxpayer who employed his own capital (in lending money or selling goods on credit), and in favor of the nonresident dealer who charged its or his representative in this state with the money or goods loaned or sold here instead of treating the same as capital invested. Of course the credits representing the loans or sales in the latter class being held out of the state, could not be reached and taxed as could those made within its jurisdiction.
Therefore the board sought to remedy this situation,, not by passing a general rule upon the subject, but by interpreting its resolution of June, 1917, so as to exclude the right to use such offsets in all cases, both as to local and foreign creditors of the taxpayer, where the debt was due either by a branch business to the parent company, or by a subsidiary corporation to its principal, wherever the majority of the capital stock of the former was owned by the latter, or by its stockholders.
However, in attempting to escape from one dilemma, in which there was possibility of ■ discrimination, the board inevitably fell into another equally as discriminating; unless, as a matter of law, it was correct, in the circumstances, in ignoring the distinction by virtue of corporate entity existing between two corporations because of the ownership of their respective capital stocks. For, as to cases where both the controlling and subsidiary corporations were within the state’s taxing jurisdiction, and the same money or goods were loaned or sold by the one to the other and by the latter to its customers on terms or credits, the notes or accounts representing the two transactions would be -taxed in the hands of each, unless the principal corporation were permitted to deduct from its credits debts due by the subsidiary to it, and as to which we find no rule or suggestion’ that such deductions were allowed. It is true that plaintiff is not in this latter class, since its debts are payable out of the state; yet, the fact seems to illustrate the difficulties into which the rule leads, and the lack of uniformity in taxation which it produces. Then again, both under defendant’s interpretation of its said rule, and under the later statute (Act 24, Extra'Session of 191S), the deductions or offsets were denied to those corporations only, a majority of whose stock was owned by another corporation or by the stockholders of that other corporation; whereas, if the same condition existed in other cases, save that less than 50 per cent, of the stock was so owned, the right was accorded.
These observations would seem to demonstrate that the distinction was based, not upon any substantial reason or difference as to class or condition of the taxpayer, but merely up on the ownership of its stock. As further proof of its unsoundness, if the purpose is. to ignore corporate existence, the same individuals might own in the exact proportions stock in two corporations, each of these might acquire exactly 50 per cent, each of a third, and yet debts due by the latter to either of the two former could be deducted, because neither would own a majority.
We think no one will seriously contend that it would not be a clear discrimination, if the rule or statute frankly declared that no one should deduct a debt due out of the state simply because it was so held. Such a cdn *980 dition would amount to a plain denial of equal immunities and privileges guaranteed to all citizens, whether nonresident or local. But the same result follows in the present case, because, while domestic corporations are subjected to the same rule, there is a clear discrimination between both them and foreign corporations, and all other taxpayers, both individual and corporate, based solely upon the ownership of the corporate stocks. If both' the creditor and debtor corporation happen to be within the state, it is able to collect its taxes upon values without the exception complained of, since, if it is not paid in one’s hands, it will be in the other; but, where the debt is due out of the state, it \simply cannot be reached and cannot be taxed.
“A corporation is a legal entity entirely distinct from the stockholders or persons who compose it.” R. C. G. art. 427.
“Corporations are intellectual beings, different and distinct from all the persons who compose them.” R. C. O. art. 435.
“The estate and rights of a corporation belong so completely to the body, that none of the individuals who compose it can dispose of any part of them. * * * ” R. G. O. art. 436.
“According to the above rule, what is due to a corporation is not due tó any of the individuals who compose it, and vice ' versa. * * * ” lb. art. 437.
In the absence of fraud there is no reason in law why one individual or a corporation may not own all of the stock of another corporation. Cook on Corporations, vol. 2, pp. 1972-1980, et seq. §§ 663, 664. There is not only no law in this state at this time, prohibiting the owning by one corporation of stock in another but Act No. 267 of 1914, § 7, specifically permits it; and the effect of the rule and statute is, as suggested by counsel for appellant, to penalize such ownership in a manner which amounts to a discrimination, not sanctioned, but prohibited by the fundamental laws of both the state and United States. Louisiana Constitution 1913, art. 225; United States Constitution, 14th Amend; Hudson on Taxation, p. 344 et seq. §§ 335, 501, 503, 504, 523; State v. Poydras, 9 La. Ann. 165; State v. Merchants’ Ins. Co., 12 La. Ann. 802; N. O. v. Commercial Bank, 10 La. Ann. 735; Geren v. Gruber, 26 La. Ann. 694; La. Oil Co. v. Board of Assessors, 34 La. Ann. 618; Suc. of Mercier, 42 La. Ann. 1135, 8 South. 732, 11 L. R. A. 817; La. R. & Nav. Co. v. Madere, 124 La. 635, 50 South. 609; Standard Cotton Seed Oil Co. v. Refin. Co., 108 La. 74, 32 South. 221; Jones Co. v. Home Oil & D. Co., 124 La. 150, 49 South. 1009; Fletcher’s Cyclopedia of Corp. Law, vol. 9, p. 1309, § 621; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666.
For the reasons assigned, the judgments appealed from in these two cases are reversed and set aside; and it is now decreed that the assessments complained of be and they are hereby annulled, and the defendants are perpetually enjoined from seeking to enforce or collect taxes thereon; appellees to pay all costs.