[Brown, Ins. Commissioner v. Protective Life Insurance Company.]

The views above expressed will be a sufficient guide to the trial court upon another trial. Without noticing in detail all of the instructions given or refused, it may be well to observe that charges 11—a, 15—A, and 15 —B are correct statements of the law applicable to the evidence, and they should have been given as requested by defendant.

For the errors pointed out, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.

# Brown, Ins. Commissioner *v.* Protective Life Insurance Company.

## *Assumpsit.*

(Decided June 30, 1914.   Rehearing denied July 25, 1914.
66 South. 47.)

1. *Taxation; Exemptions; Instructions.*—A total or partial exemption must be expressed in clear and unambiguous terms, and may not be deduced from language of doubtful import; hence, a statute creating an exemption from taxation, or substituting for the benefit of particular parties taxation less onerous than that which others bear, must be strictly construed.

2. *Same.*—Under Revenue Acts of 1911, section 4. Acts 1911, p. 163, taxes imposed on the property of such insurance by counties, cities or towns, cannot be deducted from the state tax; especially in view of section 33-F thereof, and the further provisions of section 4, as the legislature in adopting the provisions in question was dealing with a state tax only.

3. *Statutes; Construction; Entirety.*—In construing a clause or provision in a revenue bill, all the sections and provisions of which became a law at the same time, the whole bill should be read, and each section thereof construed as continuous sections of the same act, in harmony with the other sections, so as to give effect to each without rendering any section nugatory if practicable.

APPEAL from Montgomery City Court.

Heard before Hon. W. W. PEARSON.

Action by the Protective Life Insurance Company against Cyrus B. Brown, as Insurance Commissioner of the State, for money had and received. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following is the agreed statement of fact:

That the Protective Life Insurance Company, hereafter called "plaintiff," has paid taxes to the county of Jefferson in the state of Alabama, for the years 1911, 1912, and 1913, amounting in the aggregate to the sum of $1,273.29. That plaintiff had paid to defendant, as Insurance Commissioner of the state of Alabama, for the same years on account of taxes provided in section 4 of the act of the Legislature entitled an act to further provide for the revenues of the state of Alabama, approved March 31, 1911, a sum equal to $1 on each $100 of the gross premiums received by it in this state during the years ending on the 31st day of December preceding, less the return premiums which are mentioned in section 4, and less the state taxes which it paid on its property for the years above mentioned. That the above-mentioned sum ($1,273.29) was paid by defendant to plaintiff as Insurance Commissioner of the state of Alabama, on April 1, 1914, said payment being made under protest after a demand had been made by defendant as Insurance Commissioner on plaintiff for the same, and had accompanied said demand with a threat of suits and penalties. That if plaintiff has the right under said section 4 to deduct, from the taxes which it shall pay, an amout equal to the county taxes which are paid by it in this state for the preceding year, plaintiff is entitled to a judgment for the amount sued for, and, if plaintiff has not the right to make such reduction, a judgment shall be rendered for defendant.

ROBERT C. BRICKELL, Attorney General and T. H. SEAY, Assistant Attorney General, for the State. This appeal brings into review a construction of section 4, Acts 1911, p. 159. An almost parallel cases to the one here at bar is that of *Lindsey v. U. S. S. & L. Co.*, 127 Ala. 366, in which it was held to the effect that there was no intention on the part of the Legislature to alter the operation of the act amending the section of the Code.—*Lunsford v. Duncan*, 71 Ala. 609; *Bradley v. State*, 69 Ala. 322. It follows, therefore, that the domestic insurance companies are not entitled to deduct from their state taxes the amount of taxes and license collected by the counties, towns and cities of the state.

THETFORD, BLAKEY & STRASSBURGER, for appellee. Where a material alternation appears in the language used, it will be presumed that the Legislature intended a different meaning.——*Lehman v. Robinson*, 59 Ala. 219. The word "taxes" means state, county and municipal taxes.—50 South. 609; 1 S. & R. 62; 3 Har. 11; 7 Ired. 55; 41 N. J. L. 471. The statute under construction is not an exemption statute, but is a commutation of taxes, and should be liberally construed.—37 Cyc. 892, et seq.; 121 N. Y. 542.

DE GRAFFENRIED, J.—In the case of *Dauphine & La Fayette Street Railway Co. v. Kennerly*, 74 Ala. 583, this court, speaking through BRICKELL, C. J., said: "It is an undoubted proposition that the burden of taxation, whether it be state or municipal, ought to fall equally upon all persons, natural or artificial, who may be subject to it. 'Taxation is the rule; exemption the exception.'—Cooley on Taxation, 146. When therefore it is claimed that by legislation any species of property, whether it be the property of natural persons, or of cor-

porations created for individual profit, is relieved from its just proportion of public burdens, the intention to release it ought to be expressed in clear and unambiguous terms; it ought not to be deduced from language of doubtful import, nor when there is room for just controversy as to the legislative intent.—Cooley on Taxation, 146; Burroughs on Taxation, 132; *Stein v. Mobile*, 17 Ala. 234; *Delaware Railroad Tax*, 18 Wall. 207 [21 L. Ed. 888]; *Erie Railway Co. v. Pennsylvania*, 21 Wall. 492 [22 L. Ed. 595]; *Bailey v. Maguire*, 22 Wall. 215 [22 L. Ed. 850]. And it cannot be of importance in the application of this principle that the exemption claimed is not total and absolute—that it is partial and qualified, assuming the form of a commutation, or the substitution of a burden less onerous than that which is imposed on the property of others of like kind. An absolute, unqualified exemption, and a partial exemption, a commutation, differ in degree, not in character. A statute creating an exemption from taxation, or substituting, for the benefit of an individual or a corporation, taxation less onerous than that which others must bear 'belongs to a class of statutes in which the narrowest meaning is to be taken which will fairly carry out the intent of the Legislature.'—*Christ Church v. Philadelphia*, 24 How. 302 [16 L. Ed. 602]."

While the above rule was announced in a case which was narrower than the one now presented, the quoted language evolves a safe and sound doctrine which our courts can, in cases presenting questions similar to the one now under consideration, follow with safety. In the instant case domestic insurance companies are claiming a commutation of taxes which are accorded to no other class of corporations in this state. Domestic insurance companies are, by the express words of our statutes, accorded commutation of taxes which are not ac-

corded other corporations, and this case is therefore brought directly within the reason of the language of Chief Justice BRICKELL which we have above quoted. If there is one sin to which the average citizen would not hesitate to plead guilty, it is the sin against his state of so assessing his property for taxation as to evade in so far as his conscience and the tax gatherers will permit the payment of that amount which the lawmakers intend to exact of him as an equivalent for the protection which is furnished him by the state. In this age of intense scholastic and logical discussion in which judicial precedents are being multiplied with unparalleled rapidity, some reason can be adduced for almost any apparently fair or candid interpretation of a statute. In some states a liberal interpretation of certain statutes is had, while in others a strict construction of the same class of statutes is the rule. The reasoning of the courts in *Camden & Amboy R. R. Co. v. Hillegas, et al.,* 18 N. J. Law, 11; *Louisiana R. R. & Nav. Co. v. Madere,* 124 La. 635, 50 South. 609; *Finney v. Mercer,* 1 Serg. & R. (Pa.) 62; *Bank v. Deming,* 29 N. C. 55; *State v. Jersey City,* 41 N. J. Law, 471; and *People v. Coleman,* 121 N. Y. 542, 25 N. E. 51—which are cited by counsel for appellee in their brief, announce no principle which can serve us in determining the question presented by this record.

In the case of *Louisiana Ry. & Nav. Co. v. Madere,* *supra,* the Supreme Court of Louisiana construed a statute which provided that "there shall be exempt from taxation for a period of ten years from the date of its completion, any railroad or part of railroad that shall have been constructed and completed subsequently to January 1st, 1905, and prior to January 1st, 1909," and declared that the general temporary exemption includes all ad valorem taxes, but not local assessments, such as

acreage and produce taxes and the mileage tax levied on railroads. In that case the claim was made that, under the broad language of the quoted act, the railroads named in the act were exempt from all kinds of taxes, but the final pronouncement of the court was as we have above stated it to be. In the case of *People v. Coleman, supra,* a statute somewhat similar to the one considered by the Supreme Court of Louisiana in *Louisiana Ry. & Nav. Co. v. Madere, supra,* was construed, and the construction, based upon what the court ascertained, from the language of the statute and its purposes to be the true meaning of the Legislature, was in harmony with the conclusion which was reached in the above case by the Supreme Court of Louisiana.

The other cases which appear above as being taken from appellee's brief have been by us carefully examined, and they do no more than construe statues which "exempt from taxation" the property of certain citizens —as soldiers of the line, etc., and in each instance the substance of the conclusion of the court was that the word "tax" is broad enough to cover state, county, and municipal taxes, and that the word would be so construed when the Legislature intended to use that word in its broad sense. In this state the rule is as we have above declared it to be, subject to the statement that when the court is called upon to construe a clause or provision in a revenue bill, as all of its sections and provisions became the law at the same time, the whole bill should be read, and each provision should be construed "as continuous sections of the same act, each in harmony with the others, so as to give effect to each without rendering nugatory any other if practical. The general rule, almost universal, in the interpretation of statutes in pari materia, is that the legislative intent, collected from all the statutes relating to the same subject, shall

prevail over the letter, especially if, in giving the precise words their ordinary meaning, manifest injustice would ensue.—*State v. Stonewall Insurance Co.*, 89 Ala. 335, 7 South. 753.

In addition to this, it must be remembered that the presumption "against absurdity in the provision of a legislative enactment is probably a more powerful guide to its construction than even the presumption against unreason, inconvenience, or injustice."—Endlich on the Interpretation of Statutes, § 264.

Section 4 of the present Revenue Bill (Acts 1911, pp. 163, 164) provides that: "Domestic insurance companies shall pay only one dollar less said return premiums on each one hundred dollars of gross premiums so received by it in this state, and any such domestic insurance company *paying a tax on its property* or shares, may deduct the same from this tax."

We have italicized that part of the quoted provision which is of interest in this case, and in this connection we may as well, at this point, direct attention to the fact that in the above-quoted provision the Legislature was dealing with a privilege tax exacted by the state for the privilege of doing business in the state. Taxes are the equivalent paid the state for protection, and in the quoted clause the Legislature was dealing with that feature of taxation which pertains to the state. It was not then dealing with county or municipal taxes, but only with the amount which should be paid to the state by domestic insurance companies for the privilege of doing business in the state and of having the right to demand by reason of that privilege that protection be accorded to them under its laws. As domestic insurance companies are domiciled in the state and for that reason are likely, in addition to paying a license tax, to pay to the state ad valorem taxes on their property,

the Legislature provided that a domestic company pay-
ing "a tax on its property or shares may deduct the
same from this tax." As the state, in the quoted clause,
was dealing with its privilege tax, and as, when the Leg-
islature was considering this clause, it had in mind a
state tax exacted for state protection and as a state
privilege, by the use of the phrase "a tax on its property"
the Legislature could hardly have had in mind a county
tax or a city tax exacted by a county or city for furnish-
ing its protection to such companies. The theory upon
which counties and cities and towns are permitted to
exact a toll, in the shape of taxes, from corporations and
people owning property in such counties, cities and
towns, is that such counties, cities, and towns furnish
county, city, and town protection to the owners of such
property. Their taxes are independent of the taxes laid
for the state and the money arising through county, city,
and town taxation is used for county, city, and town
purposes, and not for state purposes. While counties,
cities, and towns are, in their nature, political subdi-
visions of a state, nevertheless, for administrative pur-
poses, they are usually treated as distinct entities. Cer-
tainly the Legislature, in laying this privilege tax for
the state, had the power to credit such privilege tax with
the ad valorem tax paid by domestic insurance compa-
nies to counties, cities, and towns; but as the privilege
tax here under consideration is a state and not a coun-
ty, city, or town exaction, and as the state, considered
as a separate political entity, has no immediate interest
in and directly receives no benefit from the ad valorem
taxes paid counties, cities, and towns, it is difficult to
presume that the Legislature, in adopting this clause
of the Revenue Bill, could have intended, in laying this
privilege tax for the state, to credit the claim of the
state with something which had been paid not to the

state for state protection, but to a county, city, or town for county, city, or town protection. In section 33-F of this Revenue Bill we find the following: "The courts of county commissioners or other courts of like jurisdiction, except in the cases otherwise provided, may at any regular or special term add to the license and franchise taxes herein levied, such amounts, not exceeding fifty per cent. of such taxes for county purposes, as, in its judgment, may be necessary and no license shall be issued without payment of such percentage for county purposes."

Section 33-F of the Revenue Bill, which confers upon counties the authority to levy certain privilege taxes, thus refers directly to section 4 of the same bill. The two sections, by the exact terms of said section 33-F must be read together, or to be more specific, the above-quoted clause from section 4 of the Revenue Bill must be read into section 33-F of said bill, and which section is an entirely new provision to our Revenue Law.

In addition to the above, section 4 of the Revenue Bill confers authority upon cities and towns in which a domestic insurance company does business to also lay a certain privilege tax upon such companies, and this provision must be read in connection with the clause which provides for the state premium tax. It may not also be inappropriate to call attention to the fact that the right of the state, of each of its counties in which a domestic insurance company owns tangible property, and of each town and city in which it owns such property to lay an ad valorem tax upon such property is recognized and provided for by our revenue laws. If then we were to adopt the argument of appellee as the basis upon which to rest our conclusions, we would convict the Legislature of the absurdity of providing a state privilege tax and then providing a commutation of such tax by the ad

valorem taxes paid not only to the state, but to each
county and each town or city in the state, and of making
at the same time provision for certain privilege taxes
for each county, city, and town in the state in which a
domestic insurance company may do business without
any commutation whatever. Nay, more; if we, as in-
sisted by appellee, must stand upon the broad letter of
the act and hold that "a tax" means, in the connection
in which it is used, "any tax," then we should also hold,
by the same process of reasoning, that the privilege tax
provided for the state is also to be commuted by the
privilege taxes paid to counties, towns, and cities. The
word "tax" is broad enough to cover all taxes whether
levied as ad valorem, or privilege taxes and the word
"tax" when, by its context, it is shown to be so used,
should be so construed. Counsel for appellee do not,
of course, make this latter claim, but the fact that they
do not indicate the force of the reasoning that what the
Legislature intends by the use of a particular word or
phrase is to be determined, not merely by the ordinary
meaning of the word, but also by its context.

3. Appellee takes, as a handle for the argument that
"a tax," as used in the above-quoted clause, means ad
valorem taxes paid the state, the counties, and, as to
that matter, the cities and towns of the state, the fact
that section 4570 of the Code of 1907, which was super-
seded by the Revenue Bill of 1911, provided that any
insurance company paying "to the state a tax on its
property or shares may deduct the same from this tax."
In other words, says appellee, the law, previous to the
adoption of the present Revenue Bill, expressly limited
the commutation under consideration to state taxes,
and, as the express limitation fixed by the words "to the
state" does not appear in the present Revenue Bill, it
must be presumed that the Legislature must be held to

have changed its policy and to have directed the commutation to be based upon all ad valorem taxes paid, not only to the state, but to its counties, towns, and cities. Our reply to this proposition is that in separate clauses in section 4 of the Revenue Bill provision was made for certain privilege taxes on domestic insurance companies for cities and towns, and that in section 33-F of the same bill a privilege tax on domestic insurance companies is also provided. In other words, the Legislature in passing the present Revenue Bill, in which provisions for counties, cities, and towns, as well the state, are made, had in mind the general subject of taxation, state, county, and city and town, and the whole act must be construed together. When a commutation of any particular tax by the amount of other taxes appears in the act, the word "taxes" fixing the commutation should be given that definition which is reasonable and just when the word is considered in connection with the particular subject to which it refers. If, in this act, the Legislature, after declaring that counties should have the power to lay a particular privilege tax had also provided "that any domestic insurance company paying a tax on its property or shares may deduct the same from this tax," we think it would hardly be contended that this commutation could by the courts be reasonably extended to the taxes paid the state, or to even a city or town in such county although the quoted language is broad enough to admit of such strained construction. The word "tax," in such instance, would have been referred to the character of taxes then under consideration, and the commutation meant would have been the ad valorem taxes paid the county by the insurance company claiming the commutation. Indeed, but for the change in the verbiage of the statute—if the Code provision had contained the exact words that are now in

[Brown, Ins. Commissioner v. Protective Life Insurance Company.]

the Revenue Bill—we doubt if the present case would have found its way into the courts. The language, as it appears in the Revenue Bill, is broad enough to cover the claimed commutation, but when considered in connection with the subject of which it treats—premiums levied for the state—the words used are entitled, in all reason, to more confined definitions. "In the amendment, or revision or in the re-enactment of statutes, changes of phraseology, the omission of words deemed superfluous, or the addition of words rendering the intention more clear, are not infrequent. Before the courts can pronounce that the law is changed, the legislative intention to change it must be evident; language must be employed which is not susceptible of any other just construction."—*Bradley v. State,* 69 Ala. 322; *Dudley v. Steele,* 71 Ala. 423; *Lindsay v. U. S. Savings & Loan Co., et al.,* 127 Ala. 366, 28 South. 717, 51 L. R. A. 393.

In our opinion, therefore, the trial court, upon the agreed statement of the facts, committed reversible error in rendering judgment against the appellant. The judgment of the court below should have been for the appellant, and the judgment of the trial court is reversed, and a judgment is here rendered in favor of the appellant.

Reversed and rendered.

ANDERSON, C. J., and MCCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.