856 So.2d 826 (2002)
Michael PATTERSON, Commissioner of the State Department of Revenue; et al.
v.
EMERALD MOUNTAIN EXPRESSWAY BRIDGE, L.L.C., et al.
2001284.
Court of Civil Appeals of Alabama.
June 14, 2002.
Rehearing Denied August 2, 2002.
*827 William H. Pryor, Jr., atty. gen.; Ron Bowden, chief counsel, Department of Revenue and asst. atty. gen.; and Keith Maddox, asst. counsel, Department of Revenue and asst. atty. gen., for appellants.
James N. Walter, Jr., D. Kyle Johnson, M. Courtney Williams, and Richard H. Allen of Capell & Howard, P.C., Montgomery, for appellees Emerald Mountain Expressway Bridge, L.L.C., and Alabama River Parkway, L.L.C.
Thomas T. Gallion III and Constance C. Walker of Haskell, Slaughter, Young & Gallion, L.L.C., Montgomery, for amicus curiae Sarah G. Spear, revenue commissioner for Montgomery County.
Suzanne H. Mills, Tuscaloosa, for amicus curiae Doster L. McMullen, tax assessor for Tuscaloosa County.
PITTMAN, Judge.
Emerald Mountain Expressway Bridge, L.L.C., Alabama River Parkway, L.L.C., and Black Warrior Parkway, L.L.C. (hereinafter referred to collectively as "the taxpayers") filed a declaratory-judgment action requesting the trial court to interpret § 23-1-81(d), Ala.Code 1975, as exempting them from ad valorem taxation. Michael Patterson, commissioner of the State Department of Revenue, and the revenue commissioners of Elmore, Montgomery, and Tuscaloosa Counties (hereinafter referred to collectively as "the revenue commissioners") answered the complaint. The taxpayers and the revenue commissioners all filed motions for a summary judgment. The trial court eventually entered a summary judgment for the taxpayers. The revenue commissioners appeal.
We conclude that the dispositive issue is whether § 23-1-81(d), Ala.Code 1975, provides the taxpayers with an exemption from ad valorem taxation. Because we conclude that it does not provide an exemption, our holding on the exemption issue *828 pretermits a discussion of the revenue commissioners' argument regarding the manner of refunding the ad valorem taxes the taxpayers have previously paid.
We review a summary judgment de novo. Rule 56(c)(1), Ala. R. Civ. P., sets out a two-part standard for entering a summary judgment; the trial court must determine (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. Furthermore, to defeat a properly supported motion for summary judgment, the nonmovant must present "substantial evidence" to support the claim. Section 12-21-12, Ala.Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). See Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), for a further discussion of the summary-judgment standard.
The facts in this case are undisputed. The taxpayers operate toll bridges in Elmore, Montgomery, and Tuscaloosa Counties and own real property that they use in connection with the operation of the toll bridges. The taxpayers are licensed to operate the toll bridges pursuant to § 23-1-81, Ala.Code 1975. The dispute is whether § 23-1-81(d) provides the taxpayers an exemption from ad valorem taxation.
This court has stated the law relating to an exemption from ad valorem taxation as follows:
"It is well settled in Alabama law that taxation is the rule and an exemption is the exception. Chemical Waste Management, Inc. v. State, 512 So.2d 115 (Ala.Civ.App.1987). An exemption from taxation is to be strictly construed against the party claiming the exemption and in favor of the right to tax. Ex parte Fleming Foods of Alabama, Inc., 648 So.2d 577 (Ala.1994). No property is to be exempted unless the legislature's intention to exempt that property clearly appears in some statute. Brundidge Milling Co. v. State, 45 Ala.App. 208, 228 So.2d 475 (Ala.Civ.App.1969). The party seeking an exemption from taxation assumes the burden to clearly establish the right, and in all cases of doubt as to legislative intention the presumption is in favor of the taxing power. Chemical Waste Management, 512 So.2d at 119."
AU Hotel, Ltd. v. Eagerton, 689 So.2d 859, 861 (Ala.Civ.App.1996) (emphasis added).
The taxpayers argue that the Legislature's intention to exempt their real property from ad valorem taxation is contained in § 23-1-81(d), Ala.Code 1975. Section 23-1-81(c) authorizes the State Department of Transportation to license private entities "to establish or operate toll roads, toll bridges, ferries, or causeways" and "to establish and fix the rates of toll." Section 23-1-81(d) states:
"(d) After a license is issued pursuant to subsection ... (c) by ... the State Department of Transportation, no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or the toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency."
The taxpayers were licensed to operate their toll bridges by the State Department of Transportation pursuant to § 23-1-81(c).
The revenue commissioners argue that § 23-1-81(d) does not express a clear intention *829 by the Legislature to exempt the taxpayers' real property from ad valorem taxation. We agree with the revenue commissioners.
First, we agree with the revenue commissioners that § 23-1-81 is a statute that regulates the licensing of operators of toll roads and bridges. The word "tax" appears in § 23-1-81(d) in the phrase "no further license, tax, or fee may be imposed by any governmental body or agency." As stated above, § 23-1-81(c) grants the State Department of Transportation the authority to license a private entity to operate a toll road or a toll bridge. We interpret § 23-1-81(d) as providing that the license issued by the State Department of Transportation in this case for the operation of a toll bridge is the only license needed for the operation of the toll bridge, and the phrase containing the word "tax" prohibits any other governmental entity from requiring any further "license, tax, or fee" for the operation of the toll bridge. Furthermore, the word "ad valorem" is not used at all in Title 23"Highways, Roads, Bridges, and Ferries." Therefore, we conclude that § 23-1-81(d) does not express a clear legislative intent to exempt the taxpayers' property from ad valorem taxation.
Our conclusion is further buttressed by § 40-9-1, Ala.Code 1975, which states: "The following property and persons shall be exempt from ad valorem taxation and none other ..." (emphasis added). The property and persons subsequently listed in subsection (1) through (26) do not include the taxpayers' or their real property. The taxpayers counter this reasoning by pointing out in their brief that Code sections other than § 40-9-1 provide for exemptions from ad valorem taxation.
The taxpayers are correct that other provisions of Alabama law provide exemptions from ad valorem taxation; however, all those provisions contain an express exemption from ad valorem taxation. See, e.g., Ala. Const.1901, Amend. No. 325 and Amend. No. 373; § 4-2A-17, Ala.Code 1975; § 10-4-193, Ala.Code 1975; § 11-54B-20, Ala.Code 1975; § 16-25-22, Ala. Code 1975; § 31-2-80, Ala.Code 1975; § 32-11-2, Ala.Code 1975; § 40-8-1(d), Ala.Code 1975; § 40-12-254, Ala.Code 1975; § 40-20-12, Ala.Code 1975; § 40-22-9, Ala.Code 1975; § 41-9-256, Ala. Code 1975; § 41-10-179, Ala.Code 1975; and see generally § 40-9-1 et seq. The taxpayers have presented us with no Alabama law, and our research has disclosed no Alabama law, expressly exempting the taxpayers' property from ad valorem taxation.
Therefore, we conclude that the trial court erred by entering a summary judgment for the taxpayers. The trial court's summary judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and MURDOCK, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.
THOMPSON, Judge, dissenting.
Because I conclude that the plain and unambiguous language of § 23-1-81(d), Ala.Code 1975, exempts the taxpayers' toll bridges from ad valorem taxes, I must respectfully dissent.
The full text of the applicable statute provides:
"§ 23-1-81. County commissionsAuthority to establish, operate, etc., bridges, ferries, causeways, etc.; licensing.
"(a) The county commission of each county is invested with authority to purchase *830 or establish toll bridges, free bridges, causeways, and ferries or free ferries within their respective jurisdictions as provided in this article and may levy a special tax to purchase or build the bridges and causeways when, in the opinion of the county commission, the public good requires it.
"(b) The county commission of each county may also license any individual, group of individuals, partnership, corporation, association, or any other legal entity to establish or to operate toll roads, toll bridges, ferries, or causeways and authorize the licensee to establish and fix the rates of toll. Toll roads and toll bridges that are licensed by a county and which are on or over the line between any two counties shall be licensed by both counties.
"(c) The State Department of Transportation may license any individual, groups of individuals, partnership, corporation, association, or any other legal entity to establish or operate toll roads, toll bridges, ferries, or causeways and authorize the licensee to establish and fix the rates of toll.
"(d) After a license is issued pursuant to subsection (b) or (c) by a county commission or the State Department of Transportation, no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or the toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency.

"(e) No toll bridge shall be established over the same watercourse within two miles of any other toll bridge.
"(f) Nothing contained in this section shall be deemed to limit the authority of the Department of Conservation and Natural Resources to grant easements and licenses with respect to the placement of bridges on state land."
(Emphasis added.)
In construing a statute, the focus of this court is to determine and give effect to the intent of the legislature in enacting the statute. State v. Pettaway, 794 So.2d 1153, 1155 (Ala.Civ.App.2001); see also Ex parte Cove Properties, Inc., 796 So.2d 331 (Ala.2000); IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344 (Ala.1992). In determining the Legislature's intent, this court must first look to the actual language of the statute as enacted by the Legislature. Young Oil Co. v. Racetrac Petroleum, Inc., 757 So.2d 380, 383-84 (Ala.1999); Ex parte Taylor, 728 So.2d 635, 636 (Ala.1998); Robicheaux v. Robicheaux, 731 So.2d 1222, 1223 (Ala.Civ.App. 1998).

"`Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, and commonly understood meaning, and where plain language is used, the court is bound to interpret the language to mean exactly what it says.' `If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"
State v. Pettaway, 794 So.2d 1153, 1155 (Ala.Civ.App.2001) (citations omitted) (emphasis added). See also Ex parte Cove Properties, Inc., 796 So.2d 331, 333-34 (Ala.2000); Young Oil Co. v. Racetrac Petroleum, Inc., 757 So.2d 380, 383-84 (Ala. 1999); IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). Further, the Supreme Court of Alabama has stated:
"It is true that when looking at a statute we might sometimes think that the ramifications *831 of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers."

DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998) (emphasis added). When construing the language of a statute, this court must presume "`"that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)).
Section 23-1-81(d) states that "[a]fter a license is issued ..., no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency." (Emphasis added.) The words of the statute must be given their plain and ordinary meaning. See State v. Pettaway, supra. The adjective form of the word "further" is defined as "going or extending beyond: additional." Merriam-Webster's Collegiate Dictionary 474 (10th ed.1997). The noun form of the word "tax" is defined as "a charge usu. of money imposed by authority on persons or property for public purposes." Merriam-Webster's Collegiate Dictionary 1208 (10th ed.1997). The Supreme Court of Alabama has specifically held that unless the word "tax" has been expressly defined, it will be presumed to include levies for both revenue and regulatory purposes. State v. Commercial Loan Co., 251 Ala. 672, 38 So.2d 571 (Ala.1948); see also Opinion of the Justices No. 363, 694 So.2d 1307 (Ala.1997). The adjective form of the word "any" is defined as "every" and "all." Merriam-Webster's Collegiate Dictionary 53 (10th ed.1997). The language of the statute is clear and unambiguous. In interpreting the language of the statute, using the natural, ordinary, commonly understood, and rational meaning of the above words, no governmental body or agency may impose a regulatory or revenue raising tax, which would include an ad valorem tax, on the taxpayers with regard to their toll bridges, once the taxpayers had obtained the license required pursuant to § 23-1-81, Ala.Code 1975. See State v. Pettaway, supra.
Although this court will generally not look beyond the words of the statute when there is any rational way to interpret those words, see DeKalb County LP Gas Co. v. Suburban Gas, Inc., supra, I find it instructive that House Bill 352 (hereinafter "H.B. 352"), as it was originally introduced in the House of Representatives, stated
"(d) After a license is issued pursuant to this section by a county commission or the Department of Transportation, no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or the toll bridge, ferry, or causeway and no further license, tax, or fee may be imposed by any governmental body or agency with respect to the privilege of engaging in the activities licensed."

Journal of the House of Representatives, State of Alabama, 2000 Regular Session, p. *832 640. However, when H.B. 352 was sent to the Senate, after passage in the House of Representatives, the Senate amended H.B. 352, and struck the language emphasized above. The Senate approved H.B. 352, as amended, and returned it to the House. Journal of the House of Representatives, 2000 Regular Session, pp. 1484-85. The House approved H.B. 352, as amended by the Senate, and delivered it to the governor; H.B. 352 was approved and enacted into law on April 11, 2000. See Journal of the House of Representatives, 2000 Regular Session, pp. 1522, 1660; Act No. 2000-216, Ala. Acts 2000. I find the Legislature's striking of the above-emphasized language to support the conclusion that it did not intend to narrow the language of § 23-1-81(d), Ala.Code 1975, in such a manner as to subject the taxpayers to ad valorem taxation. The Legislature did not clearly express an intention to narrowly construe § 23-1-81(d), and, in fact, removed language that would limit its application. The language of the statute as enacted is deemed conclusive, and the statute should be enforced as written. See State v. Pettaway, supra.
The majority concludes that the word "tax" as it is used in § 23-1-81(d), Ala. Code 1975, refers only to licenses, taxes, and fees related to the privilege of operating the toll bridge. Such an interpretation would construe subsection (d) as relating only to regulatory taxes. In reaching that conclusion, the majority adopts one of the many arguments raised by the revenue commissioners in their briefs on appeal: that the word "tax" as it is used in § 23-1-81(d), Ala.Code 1975, refers only to regulatory taxes. However, the record reflects that the revenue commissioners did not raise that particular argument before the trial court, but presented it for the first time in their briefs on appeal. Although the law is clear that an appellee can defend the trial court's judgment with an argument not raised below, and this court may affirm the trial court's judgment on any valid legal ground,
"[t]here is a rather obvious fundamental difference in upholding the trial court's judgment and reversing it; this Court will not reverse the trial court's judgment on a ground raised for the first time on appeal .... This difference is predicated on the `long-standing, well-established rule that [in order to secure a reversal] the appellant has an affirmative duty of showing error upon the record.'"
Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (quoting Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983)); Docena Fire Dist. v. Rucker, 564 So.2d 422 (Ala.1990); McGugin v. McGugin, 357 So.2d 347 (Ala.Civ.App.1978). Because this argument was raised by the revenue commissioners for the first time on appeal, the trial court was never given an opportunity to address this assertion. See Smith v. Equifax Servs., Inc., supra. Thus, this court should not consider that argument, much less use that argument as the sole basis for its reversal of the trial court's judgment. See Smith v. Equifax Servs., Inc., supra. Further, the Supreme Court of Alabama has specifically held that unless the word "tax" has been expressly defined, it will be presumed to include levies for both revenue and regulatory purposes. State v. Commercial Loan Co., 251 Ala. 672, 38 So.2d 571 (1948). Nothing in the language of § 23-1-81, Ala.Code 1975, appears to limit the definition of the word "tax."
Most of the arguments raised on appeal by the revenue commissioners center around the Department of Revenue's position and the attorney general's opinion regarding the proper interpretation of § 23-1-81(d). See Op. Att'y Gen. No. 2000-020 (October 26, 2000). The law is well established *833 that an attorney general's opinion is advisory, is not binding, and does not have the effect of law. Farmer v. Hypo Holdings, Inc., 675 So.2d 387 (Ala.1996). This court, however, has stated that an administrative agency's interpretation of a statute it is charged with administering should be given great weight and deference. State v. Pettaway, supra; Yelverton's Inc. v. Jefferson County, 742 So.2d 1216 (Ala.Civ.App. 1997). The law is also clear that statutory tax exemptions are strictly construed against the taxpayer and in favor of the right to tax. Monroe v. Valhalla Cemetery Co., 749 So.2d 470 (Ala.Civ.App.1999). Such a construction, however, must not contravene the plain language of the statute. State v. Pettaway, 794 So.2d 1153 (Ala.Civ.App.2001).
The Supreme Court of Alabama has held that
"[tax] exemption clauses are not to be so strictly construed as to defeat or destroy the intent and purpose of the statute, and no strained statutory construction is to be given which would have that effect. Our responsibility is to give effect to the legislative intention where it is manifested."
Flav-O-Rich, Inc. v. City of Birmingham, 476 So.2d 46, 48 (Ala.1985). This court will not "read into [a] statute something which the legislature did not include[,] although it could have easily done so." Noonan v. East-West Beltline, Inc., 487 So.2d 237, 239 (Ala.1986).
The revenue commissioners assert that the attorney general's opinion is a correct interpretation of § 23-1-81(d), Ala.Code 1975. Many of the revenue commissioners arguments center around the interpretation of the subsection (d) as advanced by the attorney general's opinion. The attorney general's opinion states that the word "further" as found in § 23-1-81(d), Ala. Code 1975, and as it relates to the last portion of that provision,
"means any new or additional license tax and does not refer to existing taxes such as the state income tax, franchise tax, or ad valorem property tax. The Act does not exempt toll roads, toll bridges, ferries, and causeways from preexisting taxes. The Legislature intended to exempt toll roads, toll bridges, ferries, and causeways from any future additional license taxes imposed, in addition to the existing license taxes."
Op. Att'y Gen. No. 2000-020 (October 26, 2000). Such a reading of the statute contravenes the statute's plain and unambiguous language. As the trial court stated in its May 16, 2001, order:
"In addition to changing the word `further' into `future,' the [revenue commissioners]' construction of § 23-1-81(d) would transform the word `tax' into the term `license tax.' If the legislature had intended to limit the exemption in the statute to `new or additional license tax[es],' instead of the general exemption of `further tax' stated in the statute, it easily could have done so."
This court should not so strain statutory construction to read into § 23-1-81(d), Ala.Code 1975, language that the Legislature could have included, but did not. See Flav-O-Rich, Inc. v. City of Birmingham, supra; Noonan v. East-West Beltline, Inc., 487 So.2d 237, 239 (Ala.1986).
Further § 23-1-81(d) states that "[a]fter a license is issued ..., no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency." (Emphasis added.) The first portion of subsection (d) clearly mandates that no governmental *834 body or agency may impose any additional license fee for the purpose of constructing, owning, or operating a toll bridge, ferry, or causeway in addition to the one imposed pursuant to § 23-1-81. The interpretation of § 23-1-81(d) advanced by the revenue commissionersthat the above emphasized portion of the statute prohibits only the imposition of additional license taxes in addition to the one provided in § 23-1-81would render that portion of the statute nothing more than superfluous and redundant language; such an interpretation is contrary to the presumption that the Legislature intended that all the language of the statute have a useful purpose and some force and effect. See Ex parte Uniroyal Tire Co., supra.
Further, when a statute repeatedly uses a phrase in relation to the same object or subject matter, that phrase
"shall `be interpreted to have the same meaning' throughout.... Moreover, `where, in a constitution or statute, a word or phrase is repeated, and in one instance its meaning is definite and clear, and in the other it is susceptible of two meanings, it will be presumed to have been employed in the former sense.'"
House v. Cullman County, 593 So.2d 69, 72 (Ala.1992) (citations omitted). The word "further" is used as an adjective twice in § 23-1-81(d), Ala.Code 1975. The word "further," as it is first used in § 23-1-81, Ala.Code 1975, clearly means that, once a license is obtained pursuant to § 23-1-81, Ala.Code 1975, no additional license, including those existing at the time § 23-1-81, Ala.Code 1975, was enacted,[1] may be required for the operation of the toll bridge. Thus, it would be contrary to the principles of statutory construction to define the term "further," as it is used to describe the term "tax" in the latter portion of subsection (d), to mean only those taxes not in existence at the time of the 2000 amendment to § 23-1-81, Ala.Code 1975.
I conclude that the plain and unambiguous language of § 23-1-81(d), Ala.Code 1975, exempts the taxpayers' licensed toll bridges from ad valorem taxes. Therefore, I must respectfully dissent.
CRAWLEY, J., concurs.
NOTES
[1] The clause specifically refers, by example, to the then existing "business license," a license that existed before the 2000 amendment to § 23-1-81, Ala.Code 1975, which added the entire text of subsection (d).