856 So.2d 834 (2003)
Ex parte EMERALD MOUNTAIN EXPRESSWAY BRIDGE, L.L.C., et al.
(In re Michael Patterson, Commissioner of the State Department of Revenue; et al. v. Emerald Mountain Expressway Bridge, L.L.C., et al.)
1012135.
Supreme Court of Alabama.
March 14, 2003.
*836 James N. Walter., Jr., D. Kyle Johnson, M. Courtney Williams, and Richard H. Allen of Capell & Howard, P.C., Montgomery, for petitioners.
William H. Pryor, Jr., atty. gen.; and Ron Bowden, chief counsel and asst. atty. gen., and Keith Maddox, asst. counsel and asst. atty. gen., Alabama Department of Revenue.
Thomas T. Gallion III and Constance C. Walker of Haskell, Slaughter, Young & Gallion, L.L.C., Montgomery, for respondent Sarah G. Spear, Revenue Commissioner of Montgomery County.
PER CURIAM.
Emerald Mountain Expressway Bridge, L.L.C., Alabama River Parkway, L.L.C., and Black Warrior Parkway, L.L.C. (hereinafter referred to collectively as "the taxpayers"), petitioned this Court for a writ of certiorari to review the judgment of the Court of Civil Appeals reversing the trial court's judgment declaring that § 23-1-81(d), Ala.Code 1975, exempted the taxpayers from the payment of ad valorem taxes. See Patterson v. Emerald Mountain Expressway Bridge, L.L.C., 856 So.2d 826 (Ala.Civ.App.2002). We granted the taxpayers' petition, and we affirm the judgment of the Court of Civil Appeals.

Factual & Procedural History
The facts are undisputed. The taxpayers operate toll bridges in Elmore, Montgomery, and Tuscaloosa Counties and own real property used in connection with the operation of the toll bridges. The taxpayers are licensed to operate the toll bridges pursuant to § 23-1-81, Ala.Code 1975, which authorizes the county commission of each county in the State or the Alabama Department of Transportation to issue licenses to private individuals or entities to operate toll bridges and toll roads.
The dispute in this case involves the interpretation of § 23-1-81(d), specifically whether the statute provides the taxpayers an exemption from ad valorem taxes. Effective *837 April 11, 2000, the Legislature amended § 23-1-81 by enacting Act No. 2000-216, Ala. Acts 2000. The purpose of Act No. 2000-216, as it appears in the title of the act, is expressed as follows:
"To amend Section 23-1-81, Code of Alabama 1975, to allow the Department of Transportation or a county commission to issue licenses for the establishment and operation of toll roads, toll bridges, ferries or causeways; and to provide that no further tax or fees shall be imposed upon any of the toll roads, toll bridges, ferries or causeways after licensure."

(Emphasis added.) As amended, § 23-1-81(d) provides:
"After a license is issued pursuant to subsection (b) or (c) by a county commission or the State Department of Transportation, no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or the toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency."
Pursuant to § 23-1-81(d), the taxpayers sought exemptions from the payment of ad valorem taxes on the real property used in connection with the operation of the toll bridges. The exemptions were denied, and on February 9, 2001, the taxpayers sued Michael Patterson, commissioner of the Alabama Department of Revenue; William M. Harper, revenue commissioner of Elmore County; Sarah G. Spear, revenue commissioner of Montgomery County; and Doster L. McMullen, tax assessor of Tuscaloosa County (hereinafter referred to collectively as "the revenue commissioners"). The taxpayers claimed that under § 23-1-81(d) they were exempt from the payment of ad valorem taxes and that they were entitled to a refund for the ad valorem taxes previously paid for the tax year beginning on October 1, 1999, and ending on September 30, 2000.
Both the taxpayers and the revenue commissioners filed motions for a summary judgment. The trial court entered a summary judgment in favor of the taxpayers and stated that the language of § 23-1-81(d) was clear and unambiguous. The trial court concluded that the language "manifest[ed] the Legislature's intention to encourage the establishment and operation of private toll bridges by exempting them from further tax." The trial court held that because the Legislature chose to use the language, "further license, tax, or fee," it did not intend to limit the tax exemption to new or additional license taxes as the revenue commissioners argued. The trial court ordered the revenue commissioners to refund the taxes paid for the previous tax year, prorated from April 11, 2000, the effective date of § 23-1-81(d).
The revenue commissioners appealed to the Court of Civil Appeals; that court reversed the trial court's judgment, holding that § 23-1-81(d) did not provide the taxpayers with an exemption from ad valorem taxation. The Court of Civil Appeals agreed with the revenue commissioners that § 23-1-81(d) "does not express a clear intention by the Legislature to exempt the taxpayers' real property from ad valorem taxation." Patterson, supra, 856 So.2d at 828-29. The Court of Civil Appeals stated:
"First, we agree with the revenue commissioners that § 23-1-81 is a statute that regulates the licensing of operators of toll roads and bridges. The word `tax' appears in § 23-1-81(d) in the phrase `no further license, tax, or fee may be imposed by any governmental body or agency.' ... [Section] 23-1-81(c) grants the State Department of *838 Transportation the authority to license a private entity to operate a toll road or a toll bridge. We interpret § 23-1-81(d) as providing that the license issued by the State Department of Transportation in this case for the operation of a toll bridge is the only license needed for the operation of the toll bridge, and the phrase containing the word `tax' prohibits any other governmental entity from requiring any further `license, tax, or fee' for the operation of the toll bridge. Furthermore, the word `ad valorem' is not used at all in Title 23'Highways, Roads, Bridges, and Ferries.' Therefore, we conclude that § 23-1-81(d) does not express a clear legislative intent to exempt the taxpayers' property from ad valorem taxation.
"Our conclusion is further buttressed by § 40-9-1, Ala.Code 1975, which states: `The following property and persons shall be exempt from ad valorem taxation and none other ...' (emphasis added). The property and persons subsequently listed in subsection (1) through (26) do not include the taxpayers' or their real property. The taxpayers counter this reasoning by pointing out in their brief that Code sections other than § 40-9-1 provide for exemptions from ad valorem taxation.
"The taxpayers are correct that other provisions of Alabama law provide exemptions from ad valorem taxation; however, all those provisions contain an express exemption from ad valorem taxation."
Patterson, 856 So.2d at 829.

Standard of Review
We review a summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party while applying "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). A summary-judgment motion is to be granted only when the evidence demonstrates that no genuine issue exists as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P; Oliver v. Woodward, 824 So.2d 693, 697 (Ala.2001); Slay v. Keller Indus., Inc., 823 So.2d 623, 624-25 (Ala.2001).
To defeat a properly supported summary-judgment motion, the nonmoving party must present substantial evidence creating a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

Analysis
We first address the taxpayers' argument that because the plain language of § 23-1-81(d) "clearly and unambiguously" grants those licensed to operate toll roads and toll bridges an exemption from ad valorem taxation, this Court should not look beyond the words used in the statute; they argue that it is not necessary to resort to secondary rules of statutory construction in interpreting the statute. The taxpayers contend that the revenue commissioners' interpretation of § 23-1-81(d)that no additional license, tax, or fee may be imposed on the taxpayers for the purpose of licensingimpermissibly asks this Court to rewrite the statute and thus violates the separation-of-powers doctrine.
The revenue commissioners argue that the Court of Civil Appeals applied the appropriate rules of statutory construction *839 by holding that § 23-1-81(d) did not express a clear intent to exempt the operators of toll roads and toll bridges from ad valorem taxation. In their brief to this Court, the revenue commissioners argue that a reasonable interpretation of the statute is "that once a license is issued allowing owners to construct, operate and own toll bridges, governmental entities are prohibited from imposing any further or additional license, tax or fee as a condition before one may construct, own or operate a toll bridge." They contend that this Court should avoid adhering to strict definitions and should approach the issue of legislative intent by examining the statute as a whole.
All real property in this State is subject to ad valorem tax unless it is specifically exempt by a statute or a constitutional provision. § 40-11-1, Ala.Code 1975 (enumerating real property as a subject of ad valorem taxation); § 40-9-1, Ala.Code 1975 (enumerating the property and persons that are exempt from ad valorem taxation); Crim v. Phipps, 601 So.2d 474, 476 (Ala.1992). It is well settled that "taxation is the rule and an exemption is the exception." AU Hotel, Ltd. v. Eagerton, 689 So.2d 859, 861 (Ala.Civ.App.1996); Brown v. Protective Life Ins. Co., 188 Ala. 166, 168, 66 So. 47, 47 (1914). We have previously stated the general rule for construing statutes that create an exemption from taxation:
"`"The `universal rule of construction is that exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and that no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.'" State v. Bridges, 246 Ala. 486, 489, 21 So.2d 316, 317 [ (1945) ], 159 A.L.R. 678.
"`It has long been the rule in this state that one seeking an exemption from taxation assumes the burden to clearly establish the right. In all cases of doubt as to legislative intention, the presumption is in favor of the taxing power. Title Guarantee Loan and Trust Co. v. Hamilton, 238 Ala. 602, [604,] 193 So. 107, 108 [1940]; Curry v. Reeves, 240 Ala. 14, 15, 195 So. 428, 430 [1940].'"
Flav-O-Rich, Inc. v. City of Birmingham, 476 So.2d 46, 48 (Ala.1985) (emphasis added) (quoting Brundidge Milling Co. v. State, 45 Ala.App. 208, 210, 228 So.2d 475, 477 (1969)). See also Brown, 188 Ala. at 169, 66 So. at 47 (stating that a tax exemption must be expressed in "clear and unambiguous terms" and "ought not to be deduced from language of doubtful import...."). The taxpayers, therefore, have the burden to "clearly establish" an exemption from ad valorem taxation. Flav-O-Rich, 476 So.2d at 48. However, we will not strictly construe § 23-1-81(d) so as to "defeat or destroy the intent and purpose of the statute, and no strained statutory construction is to be given which would have that effect." 476 So.2d at 48.
The taxpayers are seeking a tax exemption from a Code section whose subject is not taxation or exemption. Section 23-1-81 is included in Title 23 of the Code, entitled "Highways, Roads, Bridges, and Ferries." That the Legislature knew how to clearly express a tax exemption within this title is evident by its enactment of § 23-2-153, Ala.Code 1975. In § 23-2-153, the Legislature specifically exempted the Alabama Toll Road, Bridge and Tunnel Authority from taxation. In pertinent part, § 23-2-153 provides that "the authority shall not be required to pay any taxes or assessments upon any toll road, bridge or tunnel project or any property acquired or used by the authority under *840 the provisions of this article or upon the income therefrom." The Legislature indicated its intent to grant a tax exemption by using the unambiguous, broad language, "any taxes or assessments." An assessment can be the imposition of taxes on property in relation to the value of the property. See City of Ozark v. Trawick, 604 So.2d 360, 363 n. 2 (Ala.1992) ("The term `assessment' commonly includes the preparation of a list comprising the description of the persons or property liable and an estimate of the value of the property."). Moreover, § 23-2-153 expressly describes an exemption from taxes upon property, including a bridge. No such language appears in § 23-1-81.
The taxpayers contend that because the Legislature deleted language from § 23-1-81(d) that would have supported the narrow interpretation advanced by the revenue commissioners, § 23-1-81(d) exempts them from ad valorem taxes. The taxpayers are correct that a strong inference is established by the Legislature's deletion during the legislative process of language in prior versions of the bill amending § 23-1-81(d) that would clearly have narrowed the meaning of the statute to more closely correspond to the interpretation advanced by the revenue commissioners. See Freeman v. Jefferson County, 334 So.2d 902, 904-05 (Ala.1976). The original bill introduced to the Legislature provided that "no further license, tax, or fee may be imposed by any governmental body or agency with respect to the privilege of engaging in the activities licensed." House Bill 352, Journal of the House of Representatives, State of Alabama, 2000 Regular Session, pp. 640, 1484-85, 1522, 1660. However, the Legislature's rejection of such language creates only an inference, and for all that appears, the Legislature rejected the language as superfluous. The evidence indicating the Legislature's rejection of the language was not coupled with more conclusive evidence of the addition or use of language consistent with a clearly stated intention to exempt the taxpayers from the payment of ad valorem taxes. Absent a compelling reason otherwise, we give great weight to the statutory interpretation of the revenue commissionersthe agency charged with the administration of the statute. See Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala.1996) ("in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable").
We cannot read into § 23-1-81(d) language the Legislature could easily have included, as it did the plain language used in § 23-2-153. See Noonan v. East-West Beltline, Inc., 487 So.2d 237, 239 (Ala.1986) ("It is not proper for a court to read into the statute something which the legislature did not include although it could have easily done so."). The text of § 23-1-81(d) does not clearly express the Legislature's intent to exempt operators of toll roads and toll bridges from ad valorem taxes.[1] *841 For this reason alone, the taxpayers' contentions must fail. See Flav-O-Rich, 476 So.2d at 48.
Even if we were to view the taxpayers' failure to shoulder their burden of clearly establishing the right to an exemption as the basis for resorting to rules of construction, the taxpayers fare no better. Section 23-1-81(d) provides:

"After a license is issued pursuant to subsection (b) or (c) by a county commission or the State Department of Transportation, no further license of any type from any governmental body or agency, including, but not limited to, a business license, shall be required to construct, own, or operate the toll road or the toll bridge, ferry or causeway and no further license, tax, or fee may be imposed by any governmental body or agency."

(Emphasis added.) As a rule of statutory construction, we have held that where a clause relating to the same subject matter is repeated throughout an act, each such clause should receive consistent construction. Ex parte Jackson, 625 So.2d 425, 428 (Ala.1992). The two clauses "no further license of any type" and "no further license, tax, or fee" both relate to conditions occurring after a license is issued pursuant to the statute. This is clear because the statute begins with the phrase "[a]fter a license is issued," and then proceeds to explain the events that can occur only after a license is issued. Because both clauses relate to the same subject matterevents occurring after a license is issuedboth should receive consistent construction within the statute. The use of the word "further" in both clauses ties the clauses to the initial event of obtaining a license to construct, own, and operate a toll road or a toll bridge.
The dissenting opinion to the Court of Civil Appeals' opinion in Patterson, supra, relies upon the rule of statutory construction that provides that where a word, such as "further," is repeated in a statute, "`"and in one instance its meaning is definite and clear, and in the other it is susceptible of two meanings, it will be presumed to have been employed in the former sense."'" Patterson, 856 So.2d at 834 (quoting House v. Cullman County, 593 So.2d 69, 72 (Ala.1992), quoting in turn State v. Skeggs, 154 Ala. 249, 46 So. 268 (1908)). We agree that the first clause, "no further license of any type," clearly indicates that after a license is obtained, no further license, either additional or existing, is required before one can construct, own, or operate a toll road or a toll bridge. Patterson, 856 So.2d at 833. We disagree, however, with the dissent's interpretation of the word "further" in the second clause to also mean that the taxpayers are exempt from all future additional taxes as well as those taxes in existence at the time § 23-1-81(d) was enacted, such as ad valorem taxes. 856 So.2d at 834. Such an interpretation would require us to define the word "tax" to include both regulatory and revenue taxes.
The taxpayers rely upon this Court's broad definition of the word "tax" as including all governmental charges, whether revenue or regulatory. See State *842 v. Commercial Loan Co., 251 Ala. 672, 675, 38 So.2d 571, 573 (1949). In this case, however, the broad interpretation of the word "tax" as used in the second clause conflicts with other rules of statutory construction. The principle of "ejusdem generis" provides that "general words, following the enumeration of particular classes of persons or things, are construed to apply only to persons or things of the same general nature or class as those specifically enumerated." Lambert v. Wilcox County Comm'n, 623 So.2d 727, 731 (Ala.1993); Flav-O-Rich, 476 So.2d at 51 n. 5; Ross Jewelers v. State, 260 Ala. 682, 687, 72 So.2d 402, 405 (1954).
In Lambert, this Court considered whether the phrase, "any other legal entity," as it is used in the definition of the word "business" in § 36-25-1(1) was broad enough to include county agencies within the definition. 623 So.2d at 731. Section 36-25-1(1) defines "business" as "[a]ny corporation, partnership, proprietorship, firm, enterprise, franchise, association, organization, self-employed individual, or any other legal entity." (Emphasis added.) This Court applied the "ejusdem generis" principle and acknowledged that "the enumerated classes of things preceding the general term `any other legal entity' are in the nature of private enterprises, not county governmental agencies." 623 So.2d at 731. Because the general phrase, "any other legal entity" followed specifically enumerated private enterprises within the statute, this Court concluded that the Legislature did not intend to include county agencies within the definition of "business." 623 So.2d at 731.
The word "license" is defined as a "certificate or document" evidencing permission "to commit some act that would otherwise be unlawful." Black's Law Dictionary 931 (7th ed.1999). Within the scope of § 23-1-81, the word "license" refers to a certificate or document that gives permission to private individuals or entities to construct, own, or operate a private toll road or toll bridge. The word "license" specifically enumerates the entire subject matter of the statute. The taxpayers contend that the word "tax" following the word "license" includes ad valorem taxes. The word "tax," defined broadly, does include "all governmental impositions on the person, property, privileges, occupations, and enjoyment of the people, and includes duties, imposts, and excises." Black's Law Dictionary 1469 (7th ed.1999). However, the words "tax" and "fee"[2] are general terms that follow the specifically enumerated word "license." Applying the principle of "ejusdem generis," because the general words "tax" and "fee" follow the specifically enumerated word "license" within the statute, the words "tax" and "fee" must apply only to the same subject matter as those specifically enumerated by the word "license." We conclude that the Legislature did not intend to exempt the taxpayers from ad valorem taxes by including the general term "tax" within a statute dealing only with the licensing of private toll roads and toll bridges.
In strictly construing the word "tax," we also embrace the doctrine of "noscitur a sociis." See Winner v. Marion County Comm'n, 415 So.2d 1061, 1064 (Ala.1982). This doctrine provides that "where general and specific words which are capable of an analogous meaning are associated one with the other, they take color from each other, so that the general words are restricted to a sense analogous *843 to that of the less general." Winner, 415 So.2d at 1064; State v. Western Union Tel. Co., 196 Ala. 570, 72 So. 99 (1916). The words "license," "tax," and "fee" are capable of analogous meaning. In fact, this Court has held that "license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax." Commercial Loan, 251 Ala. at 675, 38 So.2d at 574; see Densmore v. Jefferson County, 813 So.2d 844 (Ala.2001). The least general word is a "license" issued for the purpose of constructing, owning, and operating a private toll road or toll bridge. Thus, under the doctrine of "noscitur a sociis," the words "tax" and "fee" must be restricted to taxes or fees related solely to the licensing of private toll roads or toll bridges. Additional evidence that the words "tax" and "fee" are analogous to the word "license" can be drawn from that portion of the title of Acts No.2000-216 (amending § 23-1-81) referring to the authority "to issue licenses for the establishment and operation of the toll roads [and] toll bridges ...; and to provide that no further tax or fees shall be imposed." (Emphasis added.) See Jordan v. Reliable Life Ins. Co., 589 So.2d 699, 702 (Ala.1991) ("Clearly, the title of an act may serve as an aid to statutory interpretation.").
By reading the second clause as exempting taxpayers from only those additional and existing licenses, taxes, and fees dealing with the charges associated with the licensing of private toll roads and toll bridges, we can interpret both clauses using a consistent construction within the statute without violating the rule of construction relied on in the dissenting opinion to the Court of Civil Appeals' opinion. The word "further" as used in both clauses means that the taxpayers are exempt from additional or existing licenses, taxes, and fees associated with the subject matter of the statutethe licensing of private toll roads and toll bridges. To construe the provision as providing a general exemption from ad valorem taxes would change the statute under a guise of construing itan infringement upon the Legislature's prerogative.
This narrow construction is buttressed by the fact that we may ascertain the meaning of words by their context. See Sparks v. West Point Mfg. Co., 274 Ala. 102, 103, 145 So.2d 816, 817 (1962); Brown, 188 Ala. at 175, 66 So. at 49 ("what the Legislature intends by the use of a particular word or phrase is to be determined, not merely by the ordinary meaning of the word, but also by its context"); Brock v. City of Anniston, 244 Ala. 544, 549, 14 So.2d 519, 523 (1943) (the meaning of the words in a statute are to be construed within the context of the statute). The context of § 23-1-81 concerns only licensing for private toll roads and toll bridges, and the licenses, taxes, and fees associated with constructing, owning, and operating a toll road or a toll bridge. Therefore, the clauses within the section should be given the definition and construction that is "reasonable and just" when considered in connection with the subject matter of the sectionthe issuance of a license to establish or to operate private toll roads and toll bridges. See Brown, 188 Ala. at 176, 66 So. at 50.
We recognize that the rules of statutory construction are only aids in ascertaining legislative intent where a statute is ambiguous. See Moore v. City of Mobile, 248 Ala. 436, 440, 28 So.2d 203, 206 (1946). For example, if, upon consideration of the context and the subject matter of a statute, it is clear that the Legislature "intended the general words to go beyond the class specifically designated, the [ejusdem generis] rule [of statutory construction] does not apply." 248 Ala. at 440, 28 *844 So.2d at 206. Here, the subject of the entire statute deals only with licensing those who establish or operate toll roads, toll bridges, ferries, and causeways. Nothing in the statute indicates an intention by the Legislature to exempt the taxpayers from ad valorem taxes.

Conclusion
The provision in § 23-1-81(d) that no further tax can be imposed upon a private toll road or toll bridge after it is licensed applies only to taxes dealing with the actual licensing of those who establish or operate private toll roads and toll bridges. We affirm the judgment of the Court of Civil Appeals.
AFFIRMED.
SEE, LYONS, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
HOUSTON, BROWN, and WOODALL, JJ., dissent.
HOUSTON, Justice (dissenting).
I respectfully disagree with the per curiam opinion of the Court, and I adopt Judge Thompson's dissent in Patterson v. Emerald Mountain Expressway Bridge, L.L.C., 856 So.2d 826, 829 (Ala.Civ.App. 2002), as my dissent.
I authored IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344 (Ala. 1992), and DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala. 1998); I would be ignoring the holdings of those cases if I did not conclude that the plain and unambiguous language of Ala. Code 1975, § 23-1-81(d), exempts the licensed toll bridges being operated by the taxpayers from ad valorem taxes.
NOTES
[1] In his dissenting opinion, Justice Houston cites IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344 (Ala.1992), and DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998), for the proposition that the plain and unambiguous language of § 23-1-81(d) exempts the taxpayers from the payment of ad valorem taxes. However, neither case deals with a tax exemption. See IMED, 602 So.2d at 346 (interpreting a statute dealing with the misappropriation of trade secrets); DeKalb County LP Gas, 729 So.2d at 276 (interpreting a statute dealing with the enumerated powers of an electric cooperative).

This Court's holding in Crim v. Phipps, 601 So.2d 474 (Ala.1992), however, is more closely analogous to the issue now before this Court. In Crim, this Court acknowledged that tax exemptions must clearly appear in a statute or constitutional provision and held that a lease for profit to a religious, educational, or charitable entity was not a use of the property entitling the taxpayer to an exemption as provided by statute or the Alabama Constitution. 601 So.2d at 476-77. See also Ex parte Fleming Foods of Alabama, Inc., 648 So.2d 577, 578 (Ala.1994) (holding that the use tax assessment did not violate the Commerce Clause and stating that "exemptions from taxation are to be strictly construed against the person or party claiming the exemption and in favor of the right to tax").
[2] The word fee is defined as "[a] charge for labor or services." Black's Law Dictionary 629 (7th ed.1999).